1
2
3
4
5
6

**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)
seth@gutridesafier.com
MARIE A. MCCRARY (State Bar No. 262670)
marie@gutridesafier.com
HAYLEY REYNOLDS (State Bar No. 306427)
hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 336-6545
Facsimile:  (415) 449-6469

7

Attorneys for Plaintiff

8
9
10
11
12

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

13
14
15
16
17
18

| | |
|---|---|
| TRACY HOWARD, on behalf of herself and those similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> GERBER PRODUCTS COMPANY, <br><br> Defendant. | Case No.: _____ <br><br> **CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW; FAL; COMMON LAW FRAUD; CONSUMERS LEGAL REMEDIES ACT; AND UNJUST ENRICHMENT** <br><br> **JURY TRIAL DEMANDED** |

19
20
21
22
23
24
25
26
27
28

## I.   **INTRODUCTION**

1.     Plaintiff Tracy Howard, by and through her counsel, bring this class action against Defendant Gerber Products Company d/b/a Gerber ("Defendant") to seek redress for Defendant's deceptive and unlawful practices in labeling and marketing the Gerber brand baby and toddler food products.

2.     Parents are increasingly aware of the need to provide healthy food for their children that promotes physical development, especially at the critical age of less than 2 years old.

3.     Intending to profit from parents' increasing desire to purchase food for their young children that provides physical health benefits, Defendant misbrands its baby and toddler food products by making nutrient content claims on the product packages that are strictly prohibited by the Food and Drug Administration ("FDA"). Moreover, the nutrient content claims on Defendant's products mislead purchasers into believing that the products provide physical health benefits for children under two years of age in order to induce parents into purchasing Defendant's products. In fact, the Products are harmful both nutritionally and developmentally for children under two.

4.     Defendant's misbranding caused Plaintiff and members of the class to pay a price premium for the products.

## II.   **PARTIES**

5.     Tracy Howard is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Redwood City, California. Plaintiff intends to remain in Redwood City and makes her permanent home in Redwood City, California.

6.     Defendant Gerber Products Company, is a privately held corporation existing under the laws of the State of Michigan, having its principal place of business in Fremont, Michigan.

### III.   JURISDICTION AND VENUE

7.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and Plaintiff and Defendant are citizens of different states.

8.     The injuries, damages and/or harm upon which this action is based, occurred, or arose out of activities engaged in by Defendant within, affecting, and emanating from, the State of California. Defendant regularly conduct and/or solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from products provided to persons in the State of California. Defendant has engaged, and continue to engage, in substantial and continuous business practices in the State of California.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the state of California, including within this District.

10.    In accordance with California Civil Code Section 1780(d), Plaintiff concurrently files herewith a declaration establishing that, at various times throughout the class period, she purchased Gerber Products in Mountain View and Redwood City, California. Plaintiff's declaration is attached hereto as Exhibit B.

11.    Plaintiff accordingly allege that jurisdiction and venue are proper in this Court.

### IV.   SUBSTANTIVE ALLEGATIONS

12.    Defendant manufactures, distributes, markets, advertises, and sells a variety of baby and toddler food products under the brand name "Gerber." Many of these products have packaging that predominately, uniformly, and consistently make nutrient content claims on the principal display panel of the product labels (the "Products"). A non-exhaustive list of the Products and the express and implied nutrient content claims made on the product packages is attached hereto as **Exhibit A**.

13.    The Products are intended for children under the age of two. The Products are labeled with the intended age for each Product on the front label. For example, most of the Products, including the Strong pouches, are labeled as being for ages "Toddler 12+ Months."

Some Products also include the word "baby" in the product name, such as the "Snacks for Baby Wonderfoods" which are labeled as being for ages "Crawler 10+ Months." Other Products are labeled as being for a "Sitter." Defendant's website defines a "sitter" to be a child between 6-8 months.

14.     The Products all feature a prominent photo of a young baby's face on the front label.

15.     Many of the Products are baby food "pouches." These pouches that contain pureed baby food were introduced to the market over a decade ago, and as of 2018, accounted for 25 percent of baby food sales in the United States.

16.     FDA regulations explicitly prohibit certain nutrient content claims on foods intended for children under the age of two. 21 C.F.R. § 101.13(b)(3).

17.     An ever-growing industry, there is seemingly no limit to the combination of foods that can go into baby food pouches, as evidenced by the wide array of flavors of the Products. Looking for a way to differentiate itself in the growing market, Defendant has turned to making nutrient content claims on the front of the Product labels.

18.     For example, one line of the Products are pouches called "Plant-tastic" that state on the front label, "2 grams of plant protein" and on the back label, "Nutritious, plant-based, and specially designed to provide 2 grams of protein." Exemplars are shown below:



19.     As described in detail below, Defendant's advertising and labeling of the Products with nutrient content claims is unlawful, misleading, deceptive, and intended to induce consumers to purchase the Products at a premium price. These claims deceive and mislead reasonable consumers into believing that the Products provide physical health benefits for their child when in fact, the Products are harmful for children under two both nutritionally and developmentally.

### Federal and State Regulations Governing Food Labeling

20.     The Food and Drug Administration regulates nutrition content labeling. According to these regulations, "no nutrient content claims may be made on food intended specifically for use by infants and children less than 2 years of age," subject to certain exceptions not applicable here. 21 C.F.R. § 101.13(b)(3).

21.     According to the regulations, nutrient content claims can be expressed or implied. 21 C.F.R. § 101.13(b)(1), 21 C.F.R. § 101.13(b)(2).

22.     An express nutrient content claim is "any direct statement about the level (or range) of a nutrient in the food." 21 C.F.R. § 101.13(b)(1). Further, where information that is required or permitted to be "declared in nutrition labeling, and that appears as part of the nutrition label . . . is declared elsewhere on the label or in labeling, it is a nutrient content claim and is subject to the requirements for nutrient content claims." 21 C.F.R. § 101.13(b)(1).

23.     An implied nutrient content claim is any claim that: "(i) Describes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (e.g., "high in oat bran"); or (ii) Suggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient (e.g., "healthy, contains 3 grams (g) of fat")." 21 C.F.R. § 1013(b)(2).

24.     The FDA explicitly regulates certain nutrient content claims such as "more" claims. "More" claims use terms such as "more," "added," "plus," or synonyms to describe the level of a nutrient in a food. 21 C.F.R. § 101.54(e). Where the claim is based on a nutrient that

has been added to the food, the food must comply with the FDA's Fortification Policy, as stated in 21 C.F.R. § 104.20. *See* 21 C.F.R. § 101.54(e)(ii).

25.    The Fortification Policy only allows for fortification under specific circum Policy goes on to list four circumstances where fortification is appropriate:

    1. "[T]o correct a dietary insufficiency recognized by the scientific community. . ."

    2. "[T]o restore such nutrient(s) to a level(s) representative of the food prior to storage, handling and processing. . ."

    3. "[I]n proportion to the total caloric content. . . to balance the vitamin, mineral, and protein content . . . ."

    4. "to avoid nutritional inferiority" when replacing a traditional food.

21 C.F.R. § 104.20(b)-(e).

26.    Identical federal and California laws regulate the content of labels on packaged food and require truthful, accurate information on the labels of packaged foods. The requirements of the federal Food, Drug & Cosmetic Act ("FDCA"), and its labeling regulations, including those set forth in 21 C.F.R. § 101, were adopted by the California legislature in the Sherman Food Drug & Cosmetic Law (the "Sherman Law"). California Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state."). The federal laws and regulations discussed herein are applicable nationwide to all sales of packaged food products. Additionally, no state imposes different requirements on labeling of packaged food for sale in the United States.

27.    California's adoption of food regulations that are identical to the federal regulations stems from the state's "historic police powers" to regulate food labeling, which long-predates the enactment of the FDCA. *See Plumley v. Massachusetts,* 155 U.S. 461, 472 (1894) ("if there be any subject over which it would seem the states ought to have plenary control, and the power to legislate in respect to which … it is the protection of the people

against fraud and deception in the sale of food products."); *see* also *Florida Lime & Avocado Growers v. Paul*, 373 U.S. 132, 144 (1963) ("States have always possessed a legitimate interest in 'the protection of (their) people against fraud and deception in the sale of food products' at retail markets within their borders.") (citation omitted).

28.     Although California amended its food labeling laws in 1995 in response to the federal implementation of the 1993 Nutrition Labeling and Education Act, California's regulations of food labels predate the enactment of the Sherman Law. For example, the current Cal. Health & Safety Code § 110660 invoked herein states "[a]ny food is misbranded if its labeling is false or misleading in any particular." California originally enacted this regulation in 1939, previously found at Cal. Health & Safety Code § 26490. *See People v. 748 Cases of Life Saver Candy Drops*, 94 Cal. App. 2d 599, 607 (1949) (applying section 26490 prohibition on "labeling is false or misleading in any particular" in food labeling claim in 1949).

29.     Under the FDCA, the term "misleading" covers labels that are technically true, but are likely to deceive consumers. Under the FDCA, if any single representation on the labeling is misleading, the entire food is misbranded, and no other statement in the labeling can cure a misleading statement.

30.     Further in addition to its blanket adoption of federal labeling requirements, California has also enacted a number of laws and regulations that adopt and incorporate specific numerated federal food laws and regulations. *See* California Health & Safety Code § 110660 (misbranded if label is misleading).

31.     Under California law, a food product that is "misbranded" cannot legally be manufactured, advertised, distributed, sold, or possessed. Misbranded products have no economic value and are legally worthless.

32.     Representing that the Products will provide certain health benefits by making unlawful nutrient content claims as Defendant's labels do is prohibited by the aforementioned misbranding laws and regulations.

33.     The regulations relating to nutrient content claims discussed herein are intended to ensure that consumers are not misled as to the actual or relative nutritional value of food products.

**<u>Defendant's Marketing and Labeling of the Products Violates State and Federal Food Labeling Laws</u>**

34.     The Products are unlawful, misbranded, and violate the Sherman Law, California Health & Safety Code § 110660, *et seq.*, because the Products are intended for children less than 2 years of age and the Products' labels contain nutrient content claims.

35.     As described above, the Products at issue in this case are intended for children 6 months and up as evidenced on the front labels and in the Product titles.

36.     Beyond the Product labels, the Products are also sold in the "Baby Food" grocery store aisles, alongside similar puree pouch products. On information and belief, Defendant directs retailers to sell the Products in the baby food aisle.

37.     Defendant misbrands the Products by making nutrient content claims that are strictly prohibited by the FDA, and by misleading purchasers into believing that its Products provide physical health benefits in order to induce parents into purchasing the Products.

38.     All the Product labels contain nutrient content claims that are unlawful. As shown in **Exhibit A**, the Product labels prominently state nutrient content claims on the front label such as "2g of Protein." The grams of protein appear in the nutrition facts panel and is therefore a nutrient content claim when stated elsewhere on the label. 21 C.F.R. § 101.13(c). The statement of the presence of other nutrients are also express nutrient content claims because it is a direct statement about the level of a nutrient in the product. *See* 21 C.F.R. § 101.13(b)(1).

39.     Some Products also include implied nutrient content claims. For example, the "Plaint-tastic" pouches state: "Nutritious, plant-based, and specially designed to provide 2 grams of protein." The explicit statement about protein in conjunction with the term "nutritious" is an implied nutrient content claim. *See* 21 C.F.R. § 101.13(b)(2); *FDA, Guidance for Industry: A Labeling Guide for Restaurants and Other Retail Establishments Selling Away-*

*From-Home Foods*, 2008 WL 2155726, at *10 (April 2008) (explicit statement about a nutrient alongside synonyms of healthy, including "nutritious," are implied nutrient content claims).

40.     Other Products make claims like "1 ½ servings of fruit" or "2 servings of superfoods." This suggests that nutrients like fiber and vitamins are present in a certain amount. Fruits and vegetables are associated with fiber and vitamins. And "superfood" is an industry term to denote nutrient-dense foods, synonymous with "healthy" and "nutritious."

41.     Some Products include a "more" claim as defined in 21 C.F.R. § 101.54(e). For example, the Banana "Wonderfood" pouch states: "with Vitamin C." In the context of the claim, "with" is a synonym for "added." Thus it is a "more" claim, which is a nutrient content claim.

42.     The ingredients of the pouches with "more" claims include "Vitamin C (Ascorbic Acid)" and "Vitamin E (Alpha Tocopheryl Acetate)." The "more" claims on these Products are based on a nutrient that has been added to the food, and the Products must comply with the Fortification Policy as stated in 21 C.F.R. § 104.20.

43.     Foods intended for children less than two are prohibited from making such nutrient content claims. 21 C.F.R. § 101.13(b)(3). Therefore, the Products are accordingly misbranded.

44.     The Products with "more" claims are also unlawfully fortified. None of the four sanctioned bases for fortification is present here. There is no recognition by the scientific community that there is a dietary insufficiency in Vitamin C or E. To the contrary, as the FDA has recognized, dietary deficiency of Vitamin C is "extremely rare in the United States." 56 FR 60624. Defendant has not added Vitamin C or E to its Products to "restore" levels of nutrients to those of the beverage before storage. The third basis for fortification relates to foods that are fortified to contain all 21 specified nutrients. *See* 21 C.F.R. § 104.20(d)(3). Defendant's Products do not contain all 21 nutrients. The fourth basis for fortification is inapplicable because there is no basis on which to conclude that the Products replace a traditional food. Therefore, the Products violate the Fortification Policy because none of the conditions for fortification have been met.

45.     In addition to being unlawful, the nutrient content claims on the Products are also separately misleading.

46.     Reasonable consumers rely on the label claims to decide to purchase the Products for children well under two years old. Reasonable consumers shopping in the baby food aisle of a grocery or online retailer see the Products alongside products intended for children as young as six months and purchase the Products for their baby or toddler under the age of two.

47.     The nutrient content claims on the Products mislead reasonable consumers into believing the Products will provide physical health benefits for their children, when in fact the Products are harmful.

48.     The FDA has long warned that nutrient content claims could be misleading. For example, in the context of express claims such as "4g PROTEIN," in published guidance the FDA has stated that "since many consumers have a limited knowledge and understanding of the amounts of nutrients that are recommended for daily consumption, a statement declaring that the product contained a specified amount of a nutrient could be misleading." 56 Fed. Reg. 60421, 60426. This is especially true in the context of children under two because there are different recommended daily intakes for nutrients for children under two because there are different recommended daily intakes for nutrients for children 0-12 months; 1-3 years; and 4 years and above.

49.     FDA has also explained that "[b]y its very presence, such a [quantitative] statement could give consumers who were unfamiliar with the dietary recommendations the false impression that the product would assist them in maintaining healthy dietary practices relative to the amount of the nutrient consumed when it, in fact, would not." *Id*

50.     The FDA described the purpose of nutrient content claim regulations to be "promoting sound nutrition for the nation's consumers." 56 Fed. Reg. 60421. The FDA relies on the USDA's development of Dietary Guidelines as the basis for encouraging and discouraging the "selection of foods containing low or high levels of certain nutrients as part of an overall diet." *Id.*

51.     The FDA forbids nutrient content claims on products intended for children under two because "the agency lacks evidence that a more restrictive dietary pattern for other nutrients such as sodium or an increased intake for nutrients such as fiber are appropriate and recommended for infants and toddlers." 56 Fed. Reg. 60421; *see also* 58 Fed. Reg. 33731, 33733. Although it has been nearly thirty years, not much has changed regarding the evidence as explained below.

52.     At the time the regulation was implemented, there were Recommended Daily Intakes ("RDI") and Daily Recommended Values ("DRV") for most nutrients for children under two. *See* 58 Fed. Reg. 2302, 2305 (stating there are RDIs for children under two); 58 FR 2206, 2211 (providing the RDIs). Despite knowing the target daily intake of nutrients for these ages, the FDA concluded that it would not be appropriate to promote nutrients on labels for this young group because "relatively little attention has been given" to the dietary patterns of children under two. 56 Fed. Reg. 60421; *see also* 60 Fed. Reg. 67184, 67191.

53.     The same is true today. For example, there are still RDIs and DRVs for most nutrients for children under two. Just as in 1991, the RDIs and DRVs of nutrients is different for different ages, with a different set of values for children 0-12 months, 1-3 years old, and 4 and above. 21 C.F.R. § 101.9(c)(8)(4). And just as in 1991, in 2020 a USDA working group concluded "[d]eveloping recommended food patterns for infants and toddlers ages 6 to 24 months is challenging. . . in part because the scientific evidence for many questions is relatively scant." Dietary Guidelines Advisory Committee. 2020. *Scientific Report of the 2020 Dietary Guidelines Advisory Committee: Advisory Report to the Secretary of Agriculture and the Secretary of Health and Human Services*. (hereinafter "2020 Scientific Report").[1]

54.     Children under two have unique dietary needs because they are experiencing huge amounts of growth, but eating relatively little solid food. Therefore, it is important that children under two receive the "most nutrient dense foods available in the household." Dewey KG. *The*

---

[1] U.S. Department of Agriculture, Agricultural Research Service, Washington, DC. Available at: https://doi.org/10.52570/DGAC2020

*challenge of meeting nutrient needs of infants and young children during the period of complementary feeding: an evolutionary perspective.* J Nutr. 2013 Dec;143(12):2050-4. doi: 10.3945/jn.113.182527. Epub 2013 Oct 16. PMID: 24132575; PMCID: PMC3827643.

55.     Dietary needs for children under two are also different from those of adults because the optimal diet for children under two also has to address needs beyond mere nutrition, such as developing neural pathways in the brain to establish healthy eating habits and developing gross and fine motor skills. The USDA-recommended diet for children under two includes nutrient-dense foods that promote exposure to new flavors and textures. Dietary Guidelines for Americans, 2020-2025. 9th Edition. December 2020. Available at DietaryGuidelines.gov (hereinafter "USDA Dietary Guidelines"). The Dietary Guidelines emphasize that the period of 0-24 months "is key for establishing healthy dietary patterns that may influence the trajectory of eating behaviors and health throughout the life course. . . . Children in this age group consume small quantities of foods, so it's important to make every bite count!" Dietary Guidelines at 53. By making nutrient content claims on its packages' front labels, Defendant misleads consumers into believing that foods for children under two should be purchased based on the quantities of the listed nutrients, when other considerations are just as, or more, important.

56.     The Guidelines also recommend that children "younger than age 2" completely "[a]void foods and beverages with added sugars." Dietary Guidelines at 61. Some Products have high amounts of added sugars. For example, the Spaghetti Rings in Meat Sauce have 3 grams added sugar, the Fruit & Yogurt Strawberry Banana pouch has 5 grams added sugar, and the Grain & Grow bars have 4 grams of added sugar.

57.     The World Health Organization has also recognized the dangers inherent in pouch products. Recognizing that "[p]ureeing foods means much of the intrinsic sugar (within cell walls of fruit and vegetables) is liberated and readily available," the WHO—while endorsing the consumption of whole fruits and vegetables—has stated that "pureed foods" "sold in pouches with spouts present[] several issues[,]" including "exposure to high concentrations of free sugars that may quickly be absorbed," "lower nutrient density," and "issues with sucking directly from the pouches," such as "t[oo]th decay" from "sucking these [sugary] foods across

the teeth."[2]

58.    The Products have high amounts of free sugars. For example, the "wonderfoods" pouch products have 8-20 grams of sugar.

59.    The impact of sugar from whole fruits is different than the impact of pureed fruits on the body. This is mainly due to the transformation of the fiber in the food. In a whole apple, for example, the fiber comes in two forms: soluble and insoluble. Having both forms of fiber is important in the body's ability to process the sugars in the fruit in a way that promotes satiety and protects the liver. When pureed, the apple is stripped of insoluble fiber and the liver is no longer protected from the sugar in the food. This is, in part, why consumption of pouches may lead to long term health risks.[3]

60.    This concept is also known as the "food matrix" of a food, which is defined by the USDA as "the nutrient and non-nutrient components of foods and their molecular relationships, i.e., chemical bonds, to each other."[4] The effect of the food matrix is that two foods of identical chemical composition, but with different structures, may have significantly different outcomes for health.

61.    The Guidelines also recognize that it is not just what infants and toddlers are fed, but how they are fed, that matters. While some parents begin exposure to solids through the use of purees, purees are not recommended for long-term use because children under two are at a crucial stage of feeding and oral development. Learning to chew and swallow soft foods helps develop speech and multi-sensory experiences that contribute to a palate for a wide range of foods later in life.

---

[2] World Health Organization, "Ending inappropriate promotion of commercially available complementary foods for infants and young children between 6 and 36 months in Europe (2019)" available at https://www.euro.who.int/en/health-topics/disease-prevention/nutrition/publications/2019/ending-inappropriate-promotion-of-commercially-available-complementary-foods-for-infants-and-young-children-between-6-and-36-months-in-europe-2019.

[3] Robert H. Lustig, *Metabolical*, at 238.

[4] https://agclass.nal.usda.gov/vocabularies/nalt/concept?uri=https://lod.nal.usda.gov/nalt/17238

CLASS ACTION COMPLAINT

62.     "In addition, feeding experiences with foods provided in different textures and forms (such as 'finger foods') help to develop manual dexterity, hand-eye coordination, and dexterity of the tongue and other mechanical features involved in chewing and swallowing. The timely introduction and progression of textures helps to support the development of appropriate feeding and eating behaviors during childhood." 2020 Scientific Report, Part D. Ch. 7.

63.     Some professions have noted delays in motor development among kids overly dependent on pouches.[5]

64.     A baby consuming a pouch is also more likely to eat more puree than when she is fed with a spoon. This is problematic in at least two ways: 1) babies are less likely to recognize satiety cues which can contribute to long term health risks; and 2) babies are filling up on purees which are "not good nutritional substitutes for breastmilk or formula in early life", according to the chair of the American Academy of Pediatrics' Committee on Nutrition.[6]

65.     As a spokeswoman for the American Academy of Pediatrics said in 2018 of the overuse of baby food pouches, "Parents are feeling reassured that their kids are getting the fruits and vegetables . . . [but] kids need the taste of what the actual food is to come to like it later."[7]

66.     Indeed, experts have cautioned that relying on pouches like Defendant's Products the Products too much can be a "gateway to bad long-term snacking habits and routine overeating."[8]

67.     For these reasons, Defendant marketing the Products as providing physical health benefits for babies and toddlers being a healthful and safe source of nutrients for babies and toddlers is misleading to reasonable consumers and the Products are actually harmful for children under two both nutritionally and developmentally.

---

[5] Alice Callahan, "The Truth About Food Pouches," New York Times, April 17, 2020, available at https://www.nytimes.com/2020/04/17/parenting/baby-food-pouches.html.
[6] Id.
[7] Rachel Cernansky, "Rethinking Baby Food Pouches," New York Times, June 19, 2018, available at https://www.nytimes.com/2018/06/19/well/rethinking-baby-food-pouches.html.
[8] Id.

68.    Defendant's marketing, advertising, and sale of the Products violates the false advertising provisions of the Sherman Law (California Health & Safety Code § 110390, *et. seq.*), including but not limited to:

a.    Section 110390, which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product;

b.    Section 110395, which makes it unlawful to manufacture, sell, deliver, hold, or offer to sell any falsely or misleadingly advertised food; and

c.    Sections 110398 and 110400, which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised.

69.    Defendant's marketing, advertising, and sale of the Products violates the misbranding provisions of the Sherman Law (California Health & Safety Code § 110660, *et. seq.*), including but not limited to:

a.    Section 110665 (a food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in 21 U.S.C. Sec. 343(q));

b.    Section 110760, which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded;

c.    Section 110765, which makes it unlawful for any person to misbrand any food; and

d.    Section 110770, which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.

70.    Defendant has violated 21 U.S.C. § 343(a), and the standards set by FDA regulations, including, but not limited to, 21 C.F.R. §§ 101.13(b), 101.13(c), 101.54(e), and 104.20, which have been incorporated by reference in the Sherman Law, by including impermissible nutrient content claims on the labels of foods intended for children less than 2

years of age, including misleading claims on the labels, and fortifying the foods without complying with the Fortification Policy.

71. A reasonable consumer would rely on the label claims to decide to purchase the Products. For example, Defendant's nutrient content claims mislead a reasonable consumer to believe the Products provide physical health benefits for their child when in fact, the Products are harmful for children under two both nutritionally and developmentally.

72. Defendant intends for and know that consumers will and do rely upon food labeling statements in making their purchasing decisions. Label claims and other forms of advertising and marketing drive product sales, particularly if placed prominently on the front of product packaging, as Defendant has done on the Product labels.

73. Because consumers pay a price premium for Products that have a nutrient content claim, by labeling the Products as providing nutritional value, Defendant is able to both increase its sales and retain more profits.

74. Defendant engaged in the practices complained of herein to further its private interests of: (i) increasing sales of its Products while decreasing the sales of competitors' products that do not make unlawful nutrient content claims, and/or (ii) commanding a higher price for the Products because consumers will pay more for them due to consumers' demand for healthful products for their children.

75. The market for baby food pouch products continues to grow, and because Defendant knows consumers rely on the nutrient content claims on the Product labels, Defendant has an incentive to continue to make such misleading and unlawful representations.

76. Defendant continues to launch new product lines with nutrient content claims to maintain its competitive edge, making it likely that Defendant will continue to misleadingly advertise its Products.

## V.    PLAINTIFF'S EXPERIENCE

75. Starting in or around 2021, Plaintiff purchased Gerber Products for her child starting when her child was under 2 years of age, including each of the following varieties:

- Strong, Pear, Sweet Potato, Greek Yogurt, Oats, and Cinnamon Pouch

- Organic for Toddlers, Plant-Tastic Pouch Southwestern Fiesta Fruit & Veggie Bean Smash
- Organic for Toddlers, Plant-Tastic Pouch Summer Fruit & Veggie Smash
- Mealtime for Toddler, Creamy Chicken Stew
- Mealtime for Toddler, Mashed Potatoes & Gravy with Roasted Chicken
- Mealtime for Toddler, Macaroni & Cheese
- Mealtime for Toddler, Pasta Stars in Meat Sauce
- Mealtime for Toddler, Pasta Stars with Chicken & Vegetables
- Lil' Crunchies, Veggie Dip
- Lil' Crunchies, Apple Sweet Potato

77. She purchased the Products from Safeway in Mountain View, California, and Walmart in Redwood City, California.

78. Plaintiff made each of her purchases after reading the nutrient content claims on the Product labels, including, for example, "2g Protein" on the Strong Pear, Sweet Potato, Greek Yogurt, Oats, and Cinnamon pouch. She purchased the Products instead of other products, because she believed the Products to be superior and appropriate in providing nutrition for her child.

79. As a result of Defendant's unlawful and misleading nutrient content claims, the Products have no, or at a minimum, a much lower value to Plaintiff.

80. Plaintiff not only purchased the Products because the labels contained nutrient content claims, but she also paid more money for the Products than she would have paid for them if they did not contain nutrient content claims.

81. Had Defendant not unlawfully and misleadingly labeled the Products, Plaintiff would not have purchased them or, at a very minimum, she would have paid less for the Products.

82. Plaintiff continues to desire to purchase pouch products, including those marketed and sold by Defendant. If the Products did not contain unlawful, deceptive, and misleading labels, Plaintiff would likely purchase the Products again in the future. Plaintiff regularly shops at stores and online retailers where the Products and other baby food products are sold.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# VI.     CLASS ALLEGATIONS

83.     Plaintiff brings this class action lawsuit on behalf of herself and a proposed class of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. Plaintiff seeks to represent the following group of similarly situated persons, defined as follows:

> Class: All persons in the State of California who purchased the Products between August 19, 2018 and the present.

84.     This action has been brought and may properly be maintained as a class action against Defendant because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

85.     Numerosity: Plaintiff does not know the exact size the Class, but she estimates that it is composed of more than 100 persons. The persons in the Class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

86.     Common Questions Predominate: This action involves common questions of law and fact to the Class because each class member's claim derives from the deceptive, unlawful and/or unfair statements and omissions that led them to rely on the unlawful nutrient content claims on the Product labels. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class to recover. The questions of law and fact common to the Class are:

a.     Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive and/or unlawful;

b.     Whether Defendant's actions violate Federal and California laws invoked herein;

c.     Whether labeling the Products with unlawful nutrient content claims causes the Products to command a price premium in the market as compared with similar products that do not make such unlawful claims;

d.     Whether Defendant's advertising and marketing regarding the Products was likely to deceive reasonable consumers;

e.     Whether representations regarding the nutrient content of the Products are material to a reasonable consumer;

f.     Whether Defendant engaged in the behavior knowingly, recklessly, or negligently;

g.     The amount of profits and revenues earned by Defendant as a result of the conduct;

h.     Whether class members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief; and

i.     Whether class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

87.     Typicality: Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendant in violation of law as complained of herein. Further, the damages of each member of the Class were caused directly by Defendant's wrongful conduct in violation of the law as alleged herein.

88.     Adequacy of Representation: Plaintiff will fairly and adequately protect the interests of all class members because it is in her best interests to prosecute the claims alleged herein to obtain full compensation due to her for the unfair and illegal conduct of which she complains. Plaintiff also has no interests that are in conflict with, or antagonistic to, the interests of class members. Plaintiff has retained highly competent and experienced class action attorneys to represent her interests and that of the class. By prevailing on her own claims, Plaintiff will establish Defendant's liability to all class members. Plaintiff and her counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for class members.

89.     Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

90.     Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## VII.      CAUSES OF ACTION

Plaintiff does not plead, and hereby disclaims, causes of action under the FDCA and regulations promulgated thereunder by the FDA. Plaintiff relies on the FDCA and FDA regulations only to the extent such laws and regulations have been separately enacted as state law or regulation or provide a predicate basis of liability under the state and common laws cited in the following causes of action.

**PLAINTIFF'S FIRST CAUSE OF ACTION**
**(Violation of the Consumers Legal Remedies Act (the "CLRA"), California Civil Code § 1750, *et seq.*)**
**On Behalf of Herself and the Class**

91.     Plaintiff realleges and incorporates the paragraphs of this Class Action Complaint as if set forth herein.

92.     Plaintiff and other Class members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

93.     The Products that Plaintiff (and other similarly situated Class members) purchased from Defendant were "goods" within the meaning of California Civil Code § 1761(a).

94.     Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

95.     Defendant's acts and practices, set forth in this Class Action Complaint, led Plaintiff and other similarly situated consumers to falsely believe that the Products provide physical health benefits for their child when in fact, the Products are harmful for children under two both nutritionally and developmentally. By engaging in the actions, representations and conduct set forth in this Class Action Complaint, Defendant has violated, and continue to violate, § 1770(a)(2), § 1770(a)(5), § 1770(a)(7), and § 1770(a)(8) of the CLRA. In violation of California Civil Code §1770(a)(2), Defendant's acts and practices constitute improper representations regarding the source, sponsorship, approval, or certification of the goods they sold. In violation of California Civil Code §1770(a)(5), Defendant's acts and practices constitute improper representations that the goods they sell have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have. In violation of California Civil Code §1770(a)(7), Defendant's acts and practices constitute improper representations that the goods it sells are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code §1770(a)(8), Defendant has disparaged the goods, services, or business of another by false or misleading representation of fact.

96.     Plaintiff requests that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendant is not restrained from engaging in these types of practices in the future, Plaintiff and the other members of the Class will continue to suffer harm. Plaintiff and those similarly situated have no adequate remedy at law to stop Defendant's continuing practices.

97.     Plaintiff provided Defendant with notice and demand that Defendant correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. Despite receiving the aforementioned notice and demand, Defendant failed to do so in that, among other things, it failed to identify similarly situated customers, notify them of their right to correction, repair, replacement or other remedy, and/or to provide that remedy. Accordingly, Plaintiff seeks, pursuant to California Civil Code § 1780(a)(3), on behalf of herself and those similarly situated class members, compensatory damages, punitive damages and restitution of any ill-gotten gains due to Defendant's acts and practices.

98.     Plaintiff also requests that this Court award her costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

## PLAINTIFF'S SECOND CAUSE OF ACTION
### (False Advertising, Business and Professions Code § 17500, *et seq.* ("FAL")) On Behalf of Herself and the Class

99.     Plaintiff reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

100.    Beginning at an exact date unknown to Plaintiff, but within three (3) years preceding the filing of the Class Action Complaint, Defendant made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of the Products.

101.    Defendant made representations and statements (by omission and commission) that led reasonable customers to believe that the Products that they were purchasing were physically beneficial for their young children.

102.    Plaintiff and those similarly situated relied to their detriment on Defendant's misleading and deceptive advertising and marketing practices, including each of the unlawful claims set forth above. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, refraining from purchasing the Products or paying less for them.

103.    Defendant's acts and omissions are likely to deceive reasonable consumers and the general public.

104.    Defendant engaged in these false, misleading and deceptive advertising and marketing practices to increase its profits. Accordingly, Defendant has engaged in false advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and Professions Code.

105.    The aforementioned practices, which Defendant used, and continue to use, to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

106.    As a direct and proximate result of such actions, Plaintiff and the other Class members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. In particular, Plaintiff, and those similarly situated, paid a price premium for the Products, i.e., the difference between the price consumers paid for the Products and the price that they would have paid but for Defendant's false, deceptive and misleading advertising. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis. Alternatively, Plaintiff and those similarly situated will seek a full refund of the price paid upon proof that the sale of the Products was unlawful.

107.    Plaintiff seeks equitable relief, including restitution, with respect to her FAL claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action will not succeed. Plaintiff and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy at law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the FAL, because Plaintiff may not be able to establish each Class member's individualized understanding of Defendant's misleading representations as described in this Complaint, but the FAL does not require individualize proof of deception or injury by absent class members. *See, e.g., Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 537

(N.D. Cal. 2012) ("restitutionary relief under the UCL and FAL 'is available without individualized proof of deception, reliance, and injury.'"). In addition, Plaintiff and the Class may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiff is unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the FAL imposes no such *mens rea* requirement and liability exists even if Defendant acted in good faith.

108.    Plaintiff seeks, on behalf of herself and those similarly situated, a declaration that the above-described practices constitute false, misleading and deceptive advertising.

109.    Plaintiff seeks, on behalf of herself and those similarly situated, an injunction to prohibit Defendant from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which they are not entitled. Plaintiff, those similarly situated and/or other California consumers have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

**PLAINTIFF'S THIRD CAUSE OF ACTION**
**(Common Law Fraud, Deceit and/or Misrepresentation)**
**On Behalf of Herself and the Class**

110.    Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

111.    Defendant has fraudulently and deceptively included unlawful nutrient content claims on the Product labels.

112.    The unlawfulness of the claims was known exclusively to, and actively concealed by, Defendant, not reasonably known to Plaintiff, and material at the time they were made. Defendant's unlawful statements concerned material facts that were essential to the

analysis undertaken by Plaintiff as to whether to purchase the Products. In misleading Plaintiff and not so informing her, Defendant breached its duty to Plaintiff. Defendant also gained financially from, and as a result of, its breach.

113.    Plaintiff and those similarly situated relied to their detriment on Defendant's unlawful representations. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation: (i) declining to purchase the Products, (ii) purchasing less of them, or (iii) paying less for the Products.

114.    By and through such fraud, deceit, and unlawful representations, Defendant intended to induce Plaintiff and those similarly situated to alter their position to their detriment. Specifically, Defendant fraudulently and deceptively induced Plaintiff and those similarly situated to, without limitation, purchase the Products.

115.    Plaintiff and those similarly situated justifiably and reasonably relied on Defendant's unlawful representations, and, accordingly, were damaged by Defendant.

116.    As a direct and proximate result of Defendant's unlawful representations, Plaintiff and those similarly situated have suffered damages, including, without limitation, the amount they paid for the Products.

117.    Defendant's conduct as described herein was wilful and malicious and was designed to maximize Defendant's profits even though Defendant knew that it would cause loss and harm to Plaintiff and those similarly situated.

### PLAINTIFF'S FOURTH CAUSE OF ACTION
**(Unlawful, unfair, and fraudulent trade practices violation of Business and Professions Code § 17200, *et seq.*)**
**On Behalf of Herself and the Class**

118.    Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

119.    Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendant has engaged, and continue to engage, in unlawful, unfair, and fraudulent trade practices in California by engaging in the conduct outlined in this Complaint.

120.    Defendant has engaged, and continue to engage, in unfair practices as described herein, in violation of the Unfair Competition Law, California Business & Professions Code §§ 17200 *et seq.* (the "UCL"), by, without limitation, including unlawful nutrient content claims on the Product labels and thereby selling Products that were not capable of being sold or held legally and which were legally worthless.

121.    Defendant has engaged, and continue to engage, in unlawful practices as described herein, in violation of the UCL, by, without limitation, violating the following laws:

(i) the CLRA as described herein; (ii) the FAL as described herein; (iii) the advertising provisions of the Sherman Law (Article 3), including without limitation, California Health & Safety Code §§ 110390, 110395, 110398 and 110400; (iv) the misbranded food provisions of the Sherman Law (Article 6), including without limitation, California Health & Safety Code §§ 110665, 110760, 110765, and 110770; and (v) and federal laws regulating the advertising and branding of food in 21 U.S.C. § 343, *et seq.* and FDA regulations, including but not limited to 21 C.F.R. §§ 101.13(b), 101.13(c), 101.54(e), and 104.20, which are incorporated into the Sherman Law (California Health & Safety Code §§ 110100(a), 110380, and 110505).

122.    Defendant has engaged, and continue to engage, in fraudulent practices as described herein, in violation of the UCL, by, without limitation, including unlawful nutrient content claims on the Product labels and thereby selling Products that were not capable of being sold or held legally and which were legally worthless.

123.    Plaintiff and those similarly situated relied to their detriment on Defendant's unlawful, unfair, and fraudulent business practices. Had Plaintiff and those similarly situated been adequately informed and not deceived by Defendant, they would have acted differently by, without limitation: (i) declining to purchase the Products, (ii) purchasing less of the Products, or (iii) paying less for the Products.

124.    Defendant's acts and omissions are likely to deceive the general public.

125.    Defendant engaged in these deceptive and unlawful practices to increase its profits. Accordingly, Defendant has engaged in unlawful trade practices, as defined and prohibited by section 17200, *et seq.* of the California Business and Professions Code.

126. The aforementioned practices, which Defendant has used to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

127. As a direct and proximate result of such actions, Plaintiff and the other Class members, have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. In particular, Plaintiff and those similarly situated paid a price premium for the Products, i.e., the difference between the price consumers paid for the Products and the price that they would have paid but for Defendant's misrepresentation. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis. Alternatively, Plaintiff and those similarly situated will seek a full refund of the price paid upon proof that the sale of the Products was unlawful.

128. As a direct and proximate result of such actions, Defendant has enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

129. Plaintiff seeks, on behalf of herself and those similarly situated, equitable relief, including restitution for the premium and/or the full price that they and others paid to Defendant as result of Defendant's conduct. Plaintiff and the Class lack an adequate remedy at law to obtain such relief with respect to their "unfairness" claims in this UCL cause of action, because there is no cause of action at law for "unfair" conduct. Plaintiff and the Class similarly lack an adequate remedy at law to obtain such relief with respect to their "unlawfulness" claims in this UCL cause of action because the Sherman Law (Articles 3 and 6) and the Federal laws and regulations referenced herein do not provide a direct cause of action, so Plaintiff and the Class must allege those violations as predicate acts under the UCL to obtain relief.

130. Plaintiff also seeks equitable relief, including restitution, with respect to her UCL unlawfulness claims for violations of the CLRA, FAL and her UCL "fraudulent" claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following allegations in

this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action do not succeed. Plaintiff and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy of law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the UCL, because Plaintiff may not be able to establish each Class member's individualized understanding of Defendant's misleading representations as described in this Complaint, but the UCL does not require individualized proof of deception or injury by absent class members. *See, e.g., Stearns v Ticketmaster*, 655 F.3d 1013, 1020, 1023-25 (distinguishing, for purposes of CLRA claim, among class members for whom website representations may have been materially deficient, but requiring certification of UCL claim for entire class). In addition, Plaintiff and the Class may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiff is unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the UCL imposes no such *mens rea* requirement and liability exists even if Defendant acted in good faith.

131.    Plaintiff seeks, on behalf of herself and those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

132.    Plaintiff seeks, on behalf of herself and those similarly situated, an injunction to prohibit Defendant from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which they were not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

**PLAINTIFF'S FIFTH CAUSE OF ACTION**
**(Unjust Enrichment)**
**On Behalf of Herself and the Class**

133.    Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

134.    Plaintiff and members of the Class members conferred a benefit on the Defendant by purchasing the Products.

135.    Defendant has been unjustly enriched in retaining the revenues from Plaintiff's and Class Members' purchases of the Products, which retention is unjust and inequitable, because Defendant sold Products that were not capable of being sold or held legally and which were legally worthless. Plaintiff paid a premium price for the Products.

136.    Because Defendant's retention of the non-gratuitous benefit conferred on them by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution and nonrestitutionary disgorgement of profits to Plaintiff and the Class members for its unjust enrichment, as ordered by the Court. Plaintiff and those similarly situated have no adequate remedy at law to obtain this restitution.

137.    Plaintiff, therefore, seeks an order requiring Defendant to pay nonrestitutionay disgorement of profits and make restitution to them and other members of the Class.

## VIII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and those similarly situated, respectfully requests that the Court enter judgement against Defendant as follows:

A.    Certification of the proposed Class, including appointment of Plaintiff's counsel as class counsel;

B.    An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Com-plaint;

C.    An award of compensatory damages in an amount to be determined at trial;

D.    An award of statutory damages in an amount to be determined at trial;

E.    An award of punitive damages in an amount to be determined at trial;

F.    An award of treble damages;

G.    An award of restitution in an amount to be determined at trial;

H.   An award of nonrestitutionary disgorgement of profits in an amount to be determined at trial;

I.   An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

J.   For reasonable attorney's fees and the costs of suit incurred; and

J.   For such further relief as this Court may deem just and proper.

## IX.   JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: August 19, 2022

**GUTRIDE SAFIER LLP**

*/s/ Seth A. Safier /s/*

Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 336-6545
Facsimile: (415) 449-6469

Attorneys for Plaintiff Tracy Howard

CLASS ACTION COMPLAINT

**Exhibit A**

| Product | Nutrient Content Claims | Age | Front Label | Back Label |
|---|---|---|---|---|
| **Organic for Toddler Plant-Tastic Pouches** | | | | |
| Organic for Toddlers Plant-Tastic Pouch Banana Berry & Veggie Smash with Oats | 2 grams of Plant Protein<br><br>Nutritious, plant-based, and specially designed to provide 2 grams of protein | Toddler 12+ Months |  |  |

| Product | Nutrient Content Claims | Age | Front Label | Back Label |
|---|---|---|---|---|
| Organic for Toddlers Plant-Tastic Pouch Sweet Potato Cherry Smash with Oats | 2 grams of Plant Protein<br><br>Nutritious, plant-based, and specially designed to provide 2 grams of protein | Toddler 12+ Months |  |  |
| Organic for Toddlers Plant-Tastic Pouch Southwestern Fiesta Fruit & Veggie Bean Smash | 2 grams of Plant Protein<br><br>Nutritious, plant-based, and specially designed to provide 2 grams of protein | Toddler 12+ Months |  |  |

| Product | Nutrient Content Claims | Age | Front Label | Back Label |
|---|---|---|---|---|
| Organic for Toddlers Plant-Tastic Pouch Summer Fruit & Veggie Smash | 2 grams of Plant Protein<br><br>Nutritious, plant-based, and specially designed to provide 2 grams of protein | Toddler 12+ Months |  |  |
| **Organic for Toddlers Pouches** | | | | |
| Organic for Toddlers Banana Raspberry & Yogurt with Vanilla | 1 ½ servings of Fruit | Toddler 12+ Months |  |  |

| Product | Nutrient Content Claims | Age | Front Label | Back Label |
|---|---|---|---|---|
| Organic for Toddlers Wonderfoods Banana Strawberry Beet Oatmeal | 1 serving of superfoods<br><br>Wonderfoods awaken toddler's love for nutritious foods<br><br>Big nutrition to help make every bite count. 1 serving of nutrient-dense superfoods per pouch. | Toddler 12+ Months |  |  |
| Organic for Toddlers Wonderfoods Mango Peach Carrot Sweet Potato Oatmeal | 1 serving of superfoods<br><br>Wonderfoods awaken toddler's love for nutritious foods<br><br>Big nutrition to help make every bite count. 1 serving of nutrient-dense superfoods per pouch. | Toddler 12+ Months |  |  |

| Product | Nutrient Content Claims | Age | Front Label | Back Label |
|---|---|---|---|---|
| **Organic for Baby Pouches** | | | | |
| Organic for Baby Wonderfoods Banana Mango Puree | 2 servings of superfoods

Wonderfoods awaken baby's love for nutritious foods

Big nutrition to help make every bite count. 2 servings of nutrient-dense superfoods per pouch. | Sitter 2ⁿᵈ Foods |  |  |
| Organic for Baby Wonderfoods Carrot Apple Mango | 1 ¼ servings of superfoods | Sitter 2nd Foods |  |  |
| **Natural for Baby Pouches** | | | | |

| Product | Nutrient Content Claims | Age | Front Label | Back Label |
|---|---|---|---|---|
| Natural for Toddler Wonderfoods Banana Blueberry *with Vitamin C | 1 ½ servings of superfoods<br><br>With Vitamin C<br><br>Wonderfoods awaken toddler's love for nutritious foods<br><br>Big nutrition to help make every bite count. 1 ½ servings of superfoods per pouch. | Toddler 12+ Months |  |  |
| Natural for Baby Wonderfoods Banana *with Vitamin C | 2 servings of superfoods<br><br>With Vitamin C<br><br>Wonderfoods awaken baby's love for nutritious foods<br><br>Big nutrition to help make every bite count. 2 servings of superfoods per pouch. | Sitter 2ⁿ Foods |  |  |

| Product | Nutrient Content Claims | Age | Front Label | Back Label |
|---|---|---|---|---|
| Natural for Baby Veggie Power<br>Sweet Potato Mango Pear & Kale *with Vitamin C | 1 full serving of Veggies<br><br>With Vitamin C | Sitter 2nd Foods |  |  |

| Product | Nutrient Content Claims | Age | Front Label | Back Label |
|---|---|---|---|---|
| Natural for Baby Veggie Power<br>Mixed Carrot<br>Apple & Coriander *with Vitamin C | 1 full serving of veggies<br><br>With Vitamin C | Sitter 2ⁿ Foods |  |  |
| Natural for Baby Veggie Power<br>Carrot, Tomato & Basil with Balsamic Vinegar *with Vitamin C | 1 ¾ servings of veggies<br><br>With Vitamin C | Sitter 2ⁿ Foods |  |  |

| Product | Nutrient Content Claims | Age | Front Label | Back Label |
|---|---|---|---|---|
| Natural for Baby Veggie Power Parsnip, Apple and Ginger *with Vitamin C | 1 full serving of veggies<br><br>With Vitamin C | Sitter 2nd Foods |  |  |
| Natural for Baby Veggie Power Pumpkin Banana Carrot | 1 full serving of veggies | Sitter 2nd Foods |  |  |

| Product | Nutrient Content Claims | Age | Front Label | Back Label |
|---------|------------------------|-----|-------------|------------|
| Natural for Baby Veggie Power Broccoli Carrot Banana Pineapple *with Vitamin C | 1 full serving of veggies<br><br>With Vitamin C | Sitter 2nd Foods |  |  |
| **Natural for Toddler Pouches** | | | | |

| Product | Nutrient Content Claims | Age | Front Label | Back Label |
|---|---|---|---|---|
| Natural for Toddler Apple Pear Peach *with Vitamin C & E | 1 ½ servings of Fruit<br><br>With Vitamin C & E<br><br>Gerber Natural for Toddlers brings the goodness of naturally nutritious fruits selected and made with strict quality standards just for toddlers. | Toddler 12+ Months | | |
| Natural for Toddler Apple Sweet Potato & Cinnamon *with Vitamin C | 2 full servings of Fruit/Veggie<br><br>With Vitamin C, E<br><br>Gerber Natural for Toddlers brings the goodness of naturally nutritious fruits selected and made with strict quality standards just for toddlers. | Toddler 12+ Months | | |

| Product | Nutrient Content Claims | Age | Front Label | Back Label |
|---|---|---|---|---|
| Natural for Toddler Sweet Potato, Mango, Pear & Kale with Vitamin C & E | 1 full serving of veggies<br><br>with Vitamin C & E | Toddler 12+ Months |  |  |

| Product | Nutrient Content Claims | Age | Front Label | Back Label |
|---|---|---|---|---|
| **Meal Time for Toddler** | | | | |
| Mealtime for Toddler Creamy Chicken Stew | 4g Protein<br><br>¼ cup of farm-grown veggies | Toddler 12+ Months |  |  |
| Mealtime for Toddler Mashed Potatoes & Gravy with Roasted Chicken | 5g Protein | Toddler 12+ Months |  |  |

| Product | Nutrient Content Claims | Age | Front Label | Back Label |
|---|---|---|---|---|
| Mealtime for Toddler Macaroni & Cheese | 6g Protein | Toddler 12+ Months |  |  |
| Mealtime for Toddler Pasta Stars in Meat Sauce | 4g Protein | Toddler 12+ Months |  |  |

| Product | Nutrient Content Claims | Age | Front Label | Back Label |
|---|---|---|---|---|
| Mealtime for Toddler Pasta Stars with Chicken & Vegetables | 5g Protein | Toddler 12+ Months |  |  |
| Mealtime for Toddler Spaghetti Rings in Meat Sauce | 6g Protein<br><br>¼ cup of farm-grown veggies | Toddler 12+ Months |  |  |

| Product | Nutrient Content Claims | Age | Front Label | Back Label |
|---|---|---|---|---|
| Mealtime for Toddler Pickups Chicken and Carrot Ravioli | 3g Protein | Toddler 12+ Months |  |  |
| Mealtime for Toddler Yellow Rice & Chicken | 5g Protein ¼ cup of farm-grown veggies | Toddler 12+ Months |  |  |

| Product | Nutrient Content Claims | Age | Front Label | Back Label |
|---|---|---|---|---|
| Mealtime for Toddler Turkey & Vegetable Ravioli | 3g Protein | Toddler 12+ Months |  |  |
| Mealtime for Toddler Spiral Pasta in Turkey Meat Sauce | 5g Protein ¼ cup of farm-grown veggies | Toddler 12+ Months |  |  |

| Product | Nutrient Content Claims | Age | Front Label | Back Label |
|---|---|---|---|---|
| Mealtime for Toddler Pasta Shells & Cheese | 6g Protein | Toddler 12+ Months |  |  |
| Mealtime Harvest Bowl Spanish-Style Sofrito | 1 full serving of veggies | Toddler 12+ Months |  |  |
| Mealtime Harvest Bowl Pesto | 1 full serving of veggies | Toddler 12+ Months |  |  |

| Product | Nutrient Content Claims | Age | Front Label | Back Label |
|---------|------------------------|-----|-------------|------------|
| **Snacks and Strong Pouches** | | | | |
| Grow Strong Pear, Sweet Potato, Greek Yogurt, Oats, Cinnamon | Grow Strong 2g Protein  Supports toddler's healthy growth with 15%DV of calcium and 2g of protein. | Toddler 12+ Months |  |  |
| Snacks for Toddler Grow Strong Banana Blueberry Purple Carrot Greek Yogurt Mixed Grains | Grow Strong 2 grams of Protein  Supports Toddler's healthy growth with 15%DV of calcium and 2 g of protein. | Toddler 12+ Months |  |  |

| Product | Nutrient Content Claims | Age | Front Label | Back Label |
|---|---|---|---|---|
| Snacks for Toddler Fruit & Yogurt pouch Strawberry Banana | 1 serving of fruit | Toddler 12+ Months |  |  |
| **Snacks for Baby Wonderfoods** | | | | |
| Snacks for Baby Wonderfoods Superfood Hearts Quinoa Strawberry Banana Broccoli | 10% DV of Vit C, 15% Vit E and 20% Iron to help support a healthy IMMUNE SYSTEM<br><br>Made with Super foods whole grains<br><br>20% DV Iron to help support healthy BRAIN DEVELOPMENT | Crawler 10+ Months |  |  |

| Product | Nutrient Content Claims | Age | Front Label | Back Label |
|---|---|---|---|---|
| | Wonderfoods awaken baby's love for nutritious foods | | | |
| Snacks for Baby Wonderfoods Superfood Hearts Quinoa Orange & Carrot | 10% DV of Vit C, 15% Vit E and 20% Iron to help support a healthy IMMUNE SYSTEM<br><br>Made with Super foods whole grains<br><br>20% DV Iron to help support healthy BRAIN DEVELOPMENT<br><br>Wonderfoods awaken baby's love for nutritious foods | Crawler 10+ Months |  |  |
| **Organic for Toddler Plant-Tastic Snacks** | | | | |

| Product | Nutrient Content Claims | Age | Front Label | Back Label |
|---|---|---|---|---|
| Organic for Toddler Plant-tastic plantsYUM Hearts Lentil Banana Carrot Raspberry | Made with Real veggies & fruits<br><br>Nutritious plant-based ingredients, carefully selected to provide 4 grams of whole grains with a taste that toddlers love. | Toddler 12+ months |  |  |
| Organic for Toddler Plant-tastic Harvest Bowl Mediterranean Style Medley | 3g of Plant Protein<br><br>1 ¾ servings of Veggies<br><br>Nutritious, plant-based, and specially designed to provide 3 grams of protein. | Toddler 12+ Months |  |  |

| Product | Nutrient Content Claims | Age | Front Label | Back Label |
|---|---|---|---|---|
| Organic for Toddler Plant-tastic Harvest Bowl Vegan Mac | 2g of Plant-Protein<br><br>1 serving of Veggies<br><br>Nutritious, plant-based, and specially designed to provide 2 grams of protein. | Toddler 12+ Months |  |  |
| Organic for Toddler Plant-tastic Lil' Crunchies White Bean Hummus | 2g of Plant Protein per serving<br><br>Made with real veggies | Toddler 12+ Months |  |  |
| **Lil' Sticks** | | | | |

| Product | Nutrient Content Claims | Age | Front Label | Back Label |
|---|---|---|---|---|
| Lil' Sticks Chicken | 9g Protein per serving | Toddler 12+ Months |  |  |
| Lil' Sticks Turkey | 9g Protein | 12+ Months |  |  |
| Lil' Crunchies | | | | |

| Product | Nutrient Content Claims | Age | Front Label | Back Label |
|---|---|---|---|---|
| Lil' Crunchies Veggie Dip | 2g of wholegrains per serving | Crawler 8+ Months | | |
| Lil' Crunchies Ranch | 2g of wholegrains per serving | Crawler 8+ Months | | |

| Product | Nutrient Content Claims | Age | Front Label | Back Label |
|---|---|---|---|---|
| Lil' Crunchies Garden Tomato | 2g of wholegrains per serving | Crawler 8+ Months |  |  |
| Lil' Crunchies Apple Sweet Potato | 2g of wholegrains per serving | Crawler 8+ Months |  |  |
| **Grain & Grow Products** | | | | |

| Product | Nutrient Content Claims | Age | Front Label | Back Label |
|---|---|---|---|---|
| Organic Grain & Grow Morning Bowl Oats, Red Quinoa & Farro with Tropical Fruits | 12g WHOLE GRAINES per serving | Crawler 10+ months |  |  |
| Organic Grain & Grow Morning Bowl Oats, Barley and Red Quinoa with Banana & Summer Berries | 10g WHOLE GRAINS per serving | Crawler 10+ months |  |  |

| Product | Nutrient Content Claims | Age | Front Label | Back Label |
|---|---|---|---|---|
| Organic Grain & Grow Soft Baked Grain Bars Banana Mango Pineapple | 4g of WHOLE GRAINS per serving | 12+ Months |  |  |
| Organic Grain & Grow Soft Baked Grain Bars Raspberry Pomegranate | 4g of WHOLE GRAINS per serving | 12+ Months |  |  |

I, Tracy Howard, declare:

1.      I am a Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.      I submit this Declaration pursuant to California Code of Civil Procedure section 2215.5 and California Civil Code section 1780(d).

3.      I reside in and make my permanent home in Redwood City, California. In the last two years, I purchased Gerber products for my child when he was under the age of two, including the following Products:

- Strong, Pear, Sweet Potato, Greek Yogurt, Oats, and Cinnamon Baby Food Pouch.
- Organic for Toddlers, Plant-Tastic Pouch Southwestern Fiesta Fruit & Veggie Bean Smash
- Organic for Toddlers, Plant-Tastic Pouch Summer Fruit & Veggie Smash
- Mealtime for Toddler, Creamy Chicken Stew
- Mealtime for Toddler, Mashed Potatoes & Gravy with Roasted Chicken
- Mealtime for Toddler, Macaroni & Cheese
- Mealtime for Toddler, Pasta Stars in Meat Sauce
- Mealtime for Toddler, Pasta Stars with Chicken & Vegetables
- Lil' Crunchies, Veggie Dip
- Lil' Crunchies, Apple Sweet Potato

4.      I purchased the products from Walmart in Mountain View, CA, and Safeway in Redwood City, CA.


I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed on   8/19/2022            , in Redwood City, California.

DocuSigned by:

DBABE788130B4A2...

Tracy Howard

-1-

DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION