BRYAN A. MERRYMAN (SBN 134357)
bmerryman@whitecase.com
KATHERINE GODAR (SBN 343096)
katherine.godar@whitecase.com
WHITE & CASE LLP
555 S. Flower Street, Suite 2700
Los Angeles, CA  90071-2433
Telephone:  (213) 620-7700
Facsimile:  (213) 452-2329

BRIENNE M. LETOURNEAU (admitted *pro hac vice*)
brienne.letourneau@whitecase.com
WHITE & CASE LLP
111 S. Wacker Dr., Suite 5100
Chicago, IL 60606-4302
Telephone:  (312) 775-4808

Attorneys for Defendant
GERBER PRODUCTS COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TRACY HOWARD, ERI NOGUCHI, and SCOTT DIAS, on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GERBER PRODUCTS COMPANY,<br><br>Defendant. | Case No. 3:22-CV-04779-VC<br><br>**DEFENDANT GERBER PRODUCTS COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  December 12, 2024<br>Time:  10:00 a.m.<br>Courtroom:  4<br>Judge:  Hon. Vince Chhabria |

1

2
## NOTICE OF MOTION AND MOTION TO DISMISS

3        NOTICE IS HEREBY GIVEN that on December 12, 2024, at 10:00 a.m., or as soon

4 thereafter as the Court is available, defendant Gerber Products Company ("Gerber") will appear

5 before the Honorable Vince Chhabria, Judge presiding, in Courtroom 4 of the United States District

6 Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco,

7 California 94102, and will, and hereby does, move to dismiss the second amended complaint filed

8 by plaintiffs Tracy Howard, Eri Noguchi, and Scott Dias ("Plaintiffs"), and each claim alleged

9 therein, pursuant to Federal Rules of Civil Procedure 8, 9(b), 12(b)(1), and 12(b)(6).

10        Gerber brings this motion on the following grounds: (1) Plaintiffs fail to plausibly allege

11 harm from the claims on Gerber's labels, as Plaintiffs' allegations are speculative, hypothetical,

12 and rely on circumstances beyond the scope of this case; (2) Ninth Circuit precedent bars Plaintiffs'

13 theory that Gerber misrepresented the protein content of certain products; (3) Plaintiffs' allegations

14 that reasonable consumers would be misled by the statements on Gerber's labels are implausible

15 and unsubstantiated; (4) Plaintiffs' claims under the UCL and the FAL fail because Plaintiffs have

16 an adequate remedy at law and lack standing to seek injunctive relief; (5) Plaintiffs' claims alleging

17 the statements on Gerber's products are unlawful are preempted, or, in the alternative, improperly

18 based on lawful label statements; (6) Plaintiffs allege the same theory of liability for their UCL

19 "unfair" prong and unjust enrichment claims, which fail to plausibly allege a reasonable consumer

20 is likely to be deceived by Gerber's labels; and (7) Plaintiffs lack standing to bring claims based on

21 statements they did not see and products they did not purchase.

22        This motion is based on this notice of motion and motion, the memorandum of points and

23 authorities, the request for judicial notice, the pleadings and documents on file, and argument and

24 other matters as may be presented to the Court at the hearing.

25
## STATEMENT OF THE ISSUES TO BE DECIDED

26 1.      **Federal Rule of Civil Procedure 9(b)'s Pleading Requirements**.
         Because Plaintiffs' claims sound in fraud, do they meet Rule 9(b)'s
27       heightened pleading standard where Plaintiffs do not allege with specificity
         that the challenged products have actually caused the alleged harms?
28

2.    **Federal Rule of Civil Procedure 8's Pleading Requirements**.    Do Plaintiffs state a claim when they do not include allegations challenging the primarily advertised ingredients or nutrients and, with respect to protein claims, their theory that protein content is understated contravenes FDA regulations?

3.    **UCL/FAL/CLRA**.    If Plaintiffs do not plausibly allege a reasonable consumer would be misled by the statements on Gerber's labels, do they state a claim under Cal. Bus. & Prof. Code §§ 17200 and 17500, or Cal. Civ. Code § 1750?  If Plaintiffs do not plausibly allege harm, do they state a claim under Cal. Bus. & Prof. Code §§ 17200 and 17500, or Cal. Civ. Code § 1750?

4.    **Availability of Adequate Legal Remedy.**  Do Plaintiffs sufficiently allege they lack an adequate legal remedy, as required to pursue equitable relief, where they base all of their theories of liability on the same factual allegations and they seek the same amount in damages and restitution?

5.    **Standing For Injunctive Relief**.  Do Plaintiffs have standing to sue for injunctive relief when they have not plausibly alleged a "certainly impending" injury?

6.    **Standing For Label Statements Not Relied Upon and Products Not Purchased**.  Do Plaintiffs have standing to assert claims based on label statements they did not rely upon and products they did not purchase, particularly when the purchased products and non-purchased products are not "substantially similar"?

7.    **Unjust Enrichment**.  Is Plaintiffs' unjust enrichment claim duplicative and therefore barred when it is supported by the same misrepresentation theory underlying their statutory claims?

Dated:  October 8, 2024                    WHITE & CASE LLP


                                           By:  _/s/ Bryan A. Merryman_____
                                                Bryan A. Merryman

                                           Attorneys for Defendant
                                           GERBER PRODUCTS COMPANY

# <u>TABLE OF CONTENTS</u>

**Page(s)**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.     FACTUAL BACKGROUND ....................................................................................... 2

III.    PLAINTIFFS' SECOND AMENDED COMPLAINT SHOULD BE DISMISSED .......... 2

      A.    Plaintiffs Fail to State a Fraud-Based Claim ..................................................... 2

          1.    Plaintiffs Fail to Allege the Products are Harmful ....................................... 3

          2.    Ninth Circuit Law Bars Plaintiffs' Protein Quantity Theory ........................ 5

          3.    The Label Statements Are Unlikely to Deceive a Reasonable
             Consumer ................................................................................................. 7

          4.    Plaintiffs Cannot Rely on Allegations of a Bare Procedural
             Violation to Meet Their Burden Under the Reasonable Consumer
             Standard ................................................................................................... 7

      B.    Plaintiffs' UCL and FAL Claims Should Be Dismissed Because They
          Have An Adequate Legal Remedy and Lack Standing to Seek Injunctive
          Relief ................................................................................................................. 7

      C.    Plaintiffs' UCL "Unlawful" Prong Claim Fails ................................................. 10

          1.    Plaintiffs' UCL "Unlawful" Claim Is Impliedly Preempted ...................... 10

          2.    Plaintiffs' UCL "Unlawful" Prong Claim Also Fails to the Extent it
             is Premised on Lawful Label Statements ................................................... 10

             a.    Some Challenged Claims Are Not Nutrient Content Claims ......... 10

             b.    Claims Including the Percentage of a Vitamin Are Lawful ........... 12

      D.    Plaintiffs Lack Standing for Claims Based on Statements They Did Not
          Rely On and Products They Did Not Purchase ................................................. 13

      E.    Plaintiffs' UCL "Unfair" Prong and Unjust Enrichment Claims Fail ................ 15

IV.    CONCLUSION ........................................................................................................ 15

GERBER'S MOTION TO DISMISS;
Case No. 3:22-cv-04779-VC

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**CASES**

4
Adams v. Haan,
    No. Sacv 20-913 JVS, 2020 WL 5648605 (C.D. Cal. Sept. 3, 2020) ........................................9

5

6
Andrade-Heymsfield v. Danone US, Inc.,
    No. 19-CV-589-CAB-WVG, 2019 WL 3817948 (S.D. Cal. Aug. 14, 2019) ....................11, 13

7
Ang v. Bimbo Bakeries USA, Inc.,
    No. 13-CV-01196-WHO, 2014 WL 1024182 (N.D. Cal. Mar. 13, 2014) ..............................15

8

9
Anthony v. Pharmavite,
    No. 18-CV-02636-EMC, 2019 WL 109446 (N.D. Cal. Jan. 4, 2019) ......................................9

10

11
Buckman v. Plaintiffs' Legal Committee,
    531 U.S. 341 (2001) ..............................................................................................................10

12
Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,
    20 Cal. 4th 163 (1999) ...........................................................................................................7

13

14
Clemmons v. Upfield US Inc.,
    667 F. Supp. 3d 5 (S.D.N.Y. 2023) ........................................................................................12

15

16
Davidson v. Sprout Foods, Inc.,
    106 F.4th 842 (9th Cir. 2024) ......................................................................................... passim

17
Durell v. Sharp Healthcare,
    183 Cal. App. 4th 1350 (2010) ..............................................................................................13

18

19
Ebner v. Fresh, Inc.,
    818 F.3d 799 (9th Cir. 2016) ...................................................................................................2

20

21
Figy v. Frito-Lay N. Am., Inc.,
    67 F. Supp. 3d 1075 (N.D. Cal. 2014) .....................................................................................7

22
Garrison v. Whole Foods Mkt. Grp., Inc.,
    No. 13-CV-05222-VC, 2014 WL 2451290 (N.D. Cal. June 2, 2014) ....................................15

23

24
Gitson v. Trader Joe's Co.,
    No. 13-CV-01333-WHO, 2013 WL 5513711 (N.D. Cal. Oct. 4, 2013) ..................................13

25

26
Grausz v. Kroger Co.,
    No. 19-cv-00449-TWR-AGS, 2021 WL 5534706 (S.D. Cal. Jan. 22, 2021) ...........................9

27
Ham v. Hain Celestial Grp., Inc.,
    70 F. Supp. 3d 1188 (N.D. Cal. 2014) ...................................................................................13

28

- ii -

GERBER'S MOTION TO DISMISS;
                                    Case No. 3:22-cv-04779-VC

*Hanna v. Walmart Inc.*,
No. 520CV01075MCSSHK, 2020 WL 7345680 (C.D. Cal. Nov. 4, 2020) ...........................8, 9

*Hanscom v. Reynolds Consumer Prod. LLC*,
No. 21-CV-03434-JSW, 2022 WL 591466 (N.D. Cal. Jan. 21, 2022) ..................................8, 9

*Hauck v. Advanced Micro Devices, Inc.*,
No. 18-CV-00447-LHK, 2019 WL 1493356 (N.D. Cal. Apr. 4, 2019)....................................15

*Howard v. Gerber Prod. Co.*,
No. 22-CV-04779-VC, 2023 WL 2716583 (N.D. Cal. Mar. 29, 2023)....................7, 11, 13, 14

*Howard v. Hain Celestial Grp., Inc. ("Hain I")*,
No. 22-CV-00527-VC, 2024 WL 718180 (N.D. Cal. Feb. 22, 2024) ..................................8, 9

*Howard v. Hain Celestial Grp., Inc. ("Hain II")*,
No. 22-CV-00527-VC, 2024 WL 4369648 (N.D. Cal. Oct. 1, 2024)................................13, 14

*Kellman v. Whole Foods Market, Inc.*,
313 F. Supp. 3d 1031 (N.D. Cal. 2018) ..................................................................................14

*Lanovaz v. Twinings N. Am., Inc.*,
726 F. App'x 590 (9th Cir. 2018) ..............................................................................................9

*Lavie v. Proctor & Gamble Co.*,
105 Cal. App. 4th 496 (2003).....................................................................................................2

*Loder v. World Sav. Bank, N.A.*,
No. C11-00053 TEH, 2011 WL 1884733 (N.D. Cal. May 18, 2011) ......................................10

*Maxwell v. Unilever U.S., Inc.*,
No. 5:12–CV–01736–EJD, 2013 WL 1435232 (N.D. Cal. Apr. 9, 2013)................................14

*Miller v. Ghirardelli Chocolate Co.*,
912 F. Supp. 2d 861 (N.D. Cal. 2012) ....................................................................................14

*Nacarino v. Kashi Co.*,
77 F.4th 1201 (9th Cir. 2023)....................................................................................................6

*Nexus Pharms., Inc. v. Cent. Admixture Pharmacy Servs., Inc.*,
48 F.4th 1040 (9th Cir. 2022)...................................................................................................10

*Rhynes v. Stryker Corp.*,
No. 10-5619 SC, 2011 WL 2149095 (N.D. Cal. May 31, 2011) ................................................8

*Robie v. Trader Joe's Co.*,
No. 20-CV-07355-JSW, 2021 WL 2548960 (N.D. Cal. June 14, 2021) ....................................5

*Robles v. Gojo Indus., Inc.*,
No. SACV21928JVSDFMX, 2022 WL 2163846 (C.D. Cal. Mar. 16, 2022), *aff'd*, No. 22-
55627, 2023 WL 4946601 (9th Cir. Aug. 3, 2023).....................................................................9

- iii -

*Sanchez v. Nurture, Inc.*,
    626 F. Supp. 3d 1107 (N.D. Cal. 2022) ............................................................12, 14

*Sanchez v. Nurture, Inc.*,
    No. 5:21-CV-08566-EJD, 2023 WL 6391487 (N.D. Cal. Sept. 29, 2023) ............................1, 7

*Shaeffer v. Califia Farms, LLC*,
    44 Cal. App. 5th 1125 (2020)................................................................................1

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020)................................................................................8

*Stengel v. Medtronic, Inc.*,
    704 F.3d 1224 (9th Cir. 2013)..............................................................................10

*In re Tobacco II Cases*,
    207 P.3d 20 (Cal. 2009) ......................................................................................13

*In re Vioxx Class Cases*,
    180 Cal. App. 4th 116 (2009)................................................................................8

*Walker v. ConAgra Foods, Inc.*,
    No. 15-CV-02424-JSW, 2016 WL 9087336 (N.D. Cal. Mar. 23, 2016) ...................................4

*Wilson v. Frito-Lay N. Am.*,
    961 F. Supp. 2d 1134 (N.D. Cal. 2013) .............................................................13, 14

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012)................................................................................7

**FEDERAL STATUTES**

21 U.S.C. § 337(a) ................................................................................................10

**FEDERAL RULES**

Fed R. Civ. P. 8 ......................................................................................................2, 3

Fed. R. Civ. P. 9(b) .........................................................................................passim

Fed. R. Civ. P. 12(b) ................................................................................................2

**FEDERAL REGULATIONS**

21 C.F.R. § 101.9 ............................................................................................5, 6, 11, 12

21 C.F.R. § 101.13 ..........................................................................................2, 10, 11, 12

21 C.F.R. § 101.65 ..................................................................................................12

21 C.F.R. § 101.93(f) ................................................................................................12

1

**STATE STATUTES**

2

Cal. Bus. & Prof. Code § 17200 .......................................................................................3

3

Cal. Bus. & Prof. Code § 17500 .......................................................................................3

4

Cal. Civ. Code § 1750.......................................................................................................3

5

Cal. Health & Safety Code § 110100(a) .........................................................................10

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GERBER'S MOTION TO DISMISS;
Case No. 3:22-cv-04779-VC

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

3    The Ninth Circuit recently confirmed that to meet the "elevated pleading standards of" Rule

4    9(b), Plaintiffs must support claims that Gerber allegedly "misled consumers into believing []

5    products provided health benefits to children under two when the products were in fact nutritionally

6    and developmentally harmful" with specific allegations that the products caused actual harm.

7    *Davidson v. Sprout Foods, Inc*., 106 F.4th 842, 845, 852 (9th Cir. 2024).  Conceding the fraud-

8    based claims in their prior complaints fell short, Plaintiffs now attempt to save them with a Second

9    Amended Complaint ("SAC").  But the SAC merely offers more of the same generalized,

10    speculative theories the Ninth Circuit rejected as insufficiently specific and concrete, and therefore

11    the SAC lacks sufficient facts to create a plausible inference that Gerber's products actually "cause

12    any of the [] harms" Plaintiffs allege.  *See id*. at 853.

13    Plaintiffs now claim the statement "2g Plant Protein" on certain product labels also deceives

14    consumers because those products "only provide 1.3-1.4 grams of protein."  SAC ¶ 63.  Essentially,

15    Plaintiffs allege Gerber should have used a different method of calculating protein content.  But

16    FDA regulations expressly permit Gerber to quantify protein using the disputed method.  Plaintiffs'

17    new theory thus is preempted, and otherwise fails to state a fraud claim.

18    Moreover, Plaintiffs do not, and cannot, allege a plausible nexus between the sugar and

19    sodium content they claim is harmful and the disputed label claims, which mention neither.  The

20    same is true of purported developmental challenges caused by consumption of pouch purees, which

21    cannot reasonably be linked to statements about protein, fruits, vegetables, and grains.  "Just

22    because a defendant truthfully advertises one of its product's health benefits does not mean that it

23    has committed fraud or deceived consumers as to all other conceivable unhealthy consequences

24    that were not disclosed."  *Sanchez v. Nurture, Inc*., No. 5:21-CV-08566-EJD, 2023 WL 6391487,

25    at *7 (N.D. Cal. Sept. 29, 2023).  A contrary standard would contravene California law by making

26    "almost any advertisement truthfully extolling a product's attributes…fodder for litigation."  *See*

27    *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1139 (2020) (cleaned up).

28    Plaintiffs' claims based on alleged technical violations of FDA labeling regulations fare no

- 1 -

better. To start, Plaintiffs' UCL and FAL claims fail because they do not allege an inadequate legal remedy, which precludes equitable relief, and have not plausibly alleged they intend to purchase the products again, which deprives them of standing for injunctive relief. Plaintiffs' "unlawful" prong claim also is preempted, and regardless, Plaintiffs may not base their claims on lawful label statements. Plaintiffs also lack standing to assert claims based on products they did not purchase, which bear largely different claims and advertised nutrients, or that lack protein statements.

Because of these deficiencies, Plaintiffs' claims should be dismissed with prejudice.

## II.    FACTUAL BACKGROUND

Gerber provides baby food products for infants and toddlers. The products sometimes bear label claims indicating the presence of a particular nutrient or ingredient, like "2g Protein" or "Real fruits & veggies." Plaintiffs allege these claims are both misleading and violate an FDA regulation governing the use of "nutrient content claims" on products "specifically intended for children under two." 21 C.F.R. § 101.13. Plaintiffs challenge label statements on a "non-exhaustive" list of 52 Gerber products ("Products") (SAC ¶ 14, Ex. A). Yet, Plaintiffs allege they purchased only 19 of those products ("Purchased Products") (SAC ¶¶ 91 [sic], 75 [sic], 76 [sic]) and expressly relied on only three label statements: "2g protein," "2 grams of Plant Protein," and "Nutritious, plant-based, and specially designed to provide 2 grams of protein" on three Products. SAC ¶¶ 93, 99, 105.

Plaintiffs assert five causes of action: (1) violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*; (2) violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; (3) violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (4) common law fraud; and (5) unjust enrichment.

## III.    PLAINTIFFS' SECOND AMENDED COMPLAINT SHOULD BE DISMISSED

### A.    Plaintiffs Fail to State a Fraud-Based Claim

A claim under the FAL, CLRA, UCL "fraudulent" prong, and for common law fraud requires misrepresentations "likely to deceive a reasonable consumer," *Ebner v. Fresh, Inc.*, 818 F.3d 799, 806 (9th Cir. 2016), meaning they are misleading to "a ***significant portion of the general consuming public***…acting reasonably in the circumstances." *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003) (emphasis added). Thus, Plaintiffs must plausibly allege: (1) the

- 2 -

Products are "nutritionally and developmentally" harmful, and (2) claims on Gerber's labels mislead reasonable consumers to believe the Products are healthy.  Plaintiffs do neither.

### 1.    Plaintiffs Fail to Allege the Products are Harmful

Plaintiffs' fraud-based claims allege nutritional statements on Gerber's Products "mislead consumers into believing that the [P]roducts are healthy for children under two years of age," when, according to Plaintiffs, the Products "are harmful both nutritionally and developmentally for children under two."  SAC ¶ 3.  This theory fails because Plaintiffs do not plausibly allege harm.

The Ninth Circuit recently held allegations based on "hypotheticals and contingencies outside the scope of th[e] case" cannot support a fraud claim, particularly where the plaintiffs do not "actually allege[]" the "products caused" harm.  *Davidson*, 106 F.4th at 853.  The *Davidson* plaintiffs—represented by the same Plaintiffs' counsel—alleged in that case another baby food company "misled consumers into believing" similar products "provided health benefits to children under two" when "high amounts of sugar" in "pureed, pouch-based foods can lead to health issues such as tooth decay" and impair development.  *Id*.  The *Davidson* plaintiffs based their claims on "articles and reports," and scant product-specific allegations.  *Id*.  Affirming dismissal, the Ninth Circuit noted the plaintiffs' allegations were "largely speculative" and lacked specific context.  *Id*.

In this case, the fraud claims in Plaintiffs' First Amended Complaint mirrored those the Ninth Circuit rejected in *Davidson*.  *See* ECF No. 61, at 3-4.  Now, Plaintiffs attempt to avoid *Davidson*'s effect with more generalized allegations from "articles and reports."  *E.g.*, SAC ¶¶ 53-55, 57, 59-60 (WHO Europe Region Nutrient and Promotion Profile Model); 51, 73 (New York Times); 50 (American Journal of Clinical Nutrition); 59 (WHO Guideline 2015).  Plaintiffs *still* "rel[y] on hypotheticals and contingencies," and *still* fail to allege the Products have caused actual harm.  *See Davidson*, 106 F.4th at 853.  This is true of all three theories:  the Products are harmful because they (1) contain excess sugar, (2) contain excess sodium, and/or (3) are pouch purees.

**Sugar theory.**  In *Davidson*, allegations that specific products "'contain[ed] high amounts of free sugars' accompanied by a list of the grams of sugar" failed to state a claim, because the plaintiffs did not "explain at what level sugars become harmful or why the levels of sugar in these products, in particular, could cause harm."  *Id*.  Plaintiffs attempt to plead around this by alleging

- 3 -

a "sugar density" of each product, which they describe as "the level at which the WHO recommends a front-of-pack 'indicator label' for products intended for infants and toddlers because of the health risks associated with that level of sugar."[1]  SAC ¶ 60.  Plaintiffs allege all Gerber products with a high "sugar density" pose the same "health risks"; *i.e.*, they "will encourage a preference for sweeter foods," which "contribute to noncommunicable diseases and obesity, contribute to dental decay, cause spikes in blood sugar, and can lead to picky eating."  *Id.* ¶¶ 60-64.

These allegations do not cure the fundamental defects that doomed the *Davidson* plaintiffs' claims.  Plaintiffs still fail to allege "at what level sugars become harmful or why the levels of sugar *in these products, in particular*, could cause harm."  *See Davidson*, 106 F.4th at 853 (emphasis added).  Alleging products "will *encourage* a preference for sweeter foods," SAC ¶¶ 60-64, does not infer they *cause* a preference.  Regardless, Plaintiffs merely allege consuming "sweeter foods" generally—not Gerber products specifically—can "contribute" or "lead" to the alleged harms.  *See* SAC ¶¶ 60-64.  These theoretical harms also require many inferential leaps—*e.g.*, the child consumed enough Gerber products alone to "encourage a preference for sweeter foods," the child developed such a preference, and the preference caused the child to eat enough "sweeter foods" to potentially cause health issues, which the child developed.  *See Davidson v. Sprout Foods Inc.*, No. 22-CV-01050-RS, 2022 WL 13801090, at *3 (N.D. Cal. Oct. 21, 2022), *aff'd in part, rev'd in part on other grounds*, 106 F.4th 842 ("The California Court of Appeal has cautioned against permitting food labeling claims that rely on inferential leaps….") (citing *Shaeffer*, 44 Cal. App. 5th at 1139).  Thus, Plaintiffs *still* do not allege Gerber's Products caused harm.  *See Davidson*, 106 F.4th at 853.

**Sodium theory.**  Plaintiffs' new theory that certain Products contain excess sodium suffers from the same flaws.  Plaintiffs allege some Products exceed the "WHO recommend[ed] limits of 50 mg of sodium per 100g of food," though Plaintiffs do not, and cannot, identify a comparable FDA or USDA limit.[2]  SAC ¶ 77.  Regardless, Plaintiffs' allegations that products high in sodium

---

[1] If Plaintiffs seek to assert claims based on a failure to include "front-of-pack indicators," such claims would be expressly preempted because they would impose a requirement that is not identical to the requirements of the Nutrition Labeling and Education Act of 1990.  *Walker v. ConAgra Foods, Inc.*, No. 15-CV-02424-JSW, 2016 WL 9087336, at *2-3 (N.D. Cal. Mar. 23, 2016).

[2] USDA's Daily Nutritional Goal for sodium is 370 mg/day for ages 6 through 11 months and 1,200 mg/day for ages 12 through 23 months. RJN Ex. 1.

- 4 -

generally may "damage the developing kidney[s]," "pre-dispose [children] to high blood pressure," and "make [children] prefer salty food later in life," SAC ¶¶ 76, 79-81, do not explain why the precise sodium level in **each Product** "could cause harm." *See Davidson*, 106 F.4th at 853. Again, Plaintiffs do not allege anyone suffered alleged health impacts from the Products. *See id.*

**Pouch theory.** Plaintiffs' attempt to rescue claims based on the purportedly harmful texture and mechanics of pouch products fares no better. Plaintiffs' allegations in the SAC largely track the deficient allegations in *Davidson*. Plaintiffs now allege "[t]he WHO cautions that pouches are not recommended" because they hinder feeding and motor skills development, may contain harmful sugars, and can lead to food waste. SAC ¶¶ 70, 72. "Not recommended" does not mean "harmful." The alleged harms also remain hypothetical because they require caretakers to make particular decisions, such as feeding a child only pureed food via pouches for extended periods or failing to balance a child's diet. *See Davidson*, 106 F.4th at 853. Plaintiffs also do not allege what frequency of consumption puts children at risk, or that any child in fact became "overly dependent" on pouches, *see id.* ¶ 73, or otherwise suffered these theoretical harms.[3]

For these reasons, Plaintiffs' allegations based on the allegedly harmful nature of Gerber's Products fail to state a fraud-based claim under the CLRA, FAL, UCL, or common law.

### 2.    Ninth Circuit Law Bars Plaintiffs' Protein Quantity Theory

Controlling law precludes Plaintiffs' new theory that Gerber misstated the protein content of "Plant-tastic" products. FDA regulations allow protein content to be "calculated on the basis of the factor 6.25 times the nitrogen content of the food" ("nitrogen method"). 21 C.F.R. § 101.9(7)(i). For products "specifically for infants through 12 months or children 1 through 3 years of age," a

---

[3] Plaintiffs' vague allegation that "[s]ome professionals have noted delays in motor development among kids overly dependent on pouches," SAC ¶ 73, does not satisfy Rule 9(b). *See Davidson*, 106 F.4th at 853. Plaintiffs also mischaracterize the *New York Times* article they cite, which quotes a single pediatric speech-language therapist speculating that "reliance on pouches is part of the reason" that "some of their toddler clients were learning to self-feed with a spoon later than usual." RJN Ex. 2, at 5. Unsubstantiated speculation does not establish a pervasive issue with pouches. *Robie v. Trader Joe's Co.*, No. 20-CV-07355-JSW, 2021 WL 2548960, at *5-6 (N.D. Cal. June 14, 2021). The article also mentions that "pediatric feeding experts…said that there's nothing wrong with giving your kids pouches from time to time" and recognizes their benefits, including convenience and better nutrition than other packaged snacks. RJN Ex. 2 at 3-4, 7.

"statement of the corrected amount of protein per serving," or "PDCAAS,"[4] "calculated as a percentage of the RDI or DRV for protein, as appropriate, and expressed as Percent of Daily Value," must also appear on the Nutrition Facts Panel ("NFP"). *Id*. Plaintiffs allege the claim "2 grams of Plant Protein" is false because "the PDCAAS of the plant proteins in the Products is low." SAC ¶ 63. Plaintiffs base this allegation on the PDCAAS-based Percent of Daily Value of "10-11%" in the Nutrition Facts Panel ("NFP"), which, they contend, shows the Products "only provide 1.3-1.4 grams of protein." *Id*.

In *Nacarino*, the Ninth Circuit affirmed this Court's holding that claims challenging a protein quantity claim validated "using a method approved by [FDA]" were preempted. 77 F.4th at 1203. There, the plaintiffs alleged labeling using the nitrogen method was "misleading because the 'amount of digestible or usable protein the [p]roducts actually deliver[ed] to the human body [was] even lower' than the actual amount of protein the products contain[ed]" based on the PDCAAS value. *Id*. at 1207. The Ninth Circuit affirmed dismissal because FDA regulations authorize manufacturers to express protein quantity outside the NFP using the nitrogen method if they include the PDCAAS "as a percent daily value in the NFP." *Id*. at 1209-10. "[S]ustaining Plaintiffs' challenge to Defendants' protein claims" thus "would indirectly establish a requirement for food labeling that differs from the federal requirements." *Id*. at 1214.

The same reasoning applies here. Plaintiffs admit Gerber expressed the Percent of Daily Value on the NFP using PDCAAS. *See* SAC ¶ 63. That is all FDA regulations require. Plaintiffs' claims based on understated protein thus are preempted, as they would use state law to require expression of protein content in a way that differs from federal requirements. *See Nacarino*, 77 F.4th at 1212. Even if not preempted, "a product's quantitative protein claims based on uncorrected values calculated using the nitrogen method are not false or misleading within the meaning of the regulations when PDCAAS-corrected percent daily value is included in the NFP." *Id*. at 1213.

For these reasons, Plaintiffs' fraud-based claims based on allegedly overstated protein quantity are preempted, or, alternatively, fail to state a claim.

---

[4] "PDCAAS" stands for "protein digestibility-corrected amino acid score" which is "a measure of protein quality." *Nacarino v. Kashi Co*., 77 F.4th 1201, 1205 (9th Cir. 2023).

**3.     The Label Statements Are Unlikely to Deceive a Reasonable Consumer**

Plaintiffs also do not allege a nexus between the label claims and harms purportedly caused by the Products' sugar and sodium content, texture, and packaging.  Plaintiffs implicitly allege reasonable consumers view claims like "2g Protein" or "2g of wholegrains per serving" and expect the Products to contain only healthy ingredients and only positively impact a child's development.  But "[j]ust because a defendant truthfully advertises one of its product's health benefits does not mean that it has committed fraud or deceived consumers as to all other conceivable unhealthy consequences that were not disclosed."  *Sanchez*, 2023 WL 6391487, at *6.[5]  Thus, as Judge Davila observed in dismissing nearly identical fraud claims, "many courts in this district have rejected theories of fraud where plaintiffs alleged the presence of added sugars rendered a general health-related claim fraudulent."  *Id*. at *7 (collecting cases).  "[E]ven if the Products' sugar content and pouch-related concerns could result in deleterious effects"—which Plaintiffs fail to allege—the SAC "does not allege that those effects would vitiate, negate, or even relate to the" benefits offered by the Products' other nutritional characteristics and ingredients.  *See id.*

**4.     Plaintiffs Cannot Rely on Allegations of a Bare Procedural Violation to Meet Their Burden Under the Reasonable Consumer Standard**

Plaintiffs do not plausibly allege the labels would mislead a reasonable consumer.[6]  That leaves allegations of bare procedural violations, which, alone, do not state a fraud claim.  *Howard v. Gerber Prod. Co*., No. 22-CV-04779-VC, 2023 WL 2716583, at *3 (N.D. Cal. Mar. 29, 2023).

**B.     Plaintiffs' UCL and FAL Claims Should Be Dismissed Because They Have an Adequate Legal Remedy and Lack Standing to Seek Injunctive Relief**

Under the UCL, "[p]revailing plaintiffs are generally limited to injunctive relief and restitution."  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 179 (1999).  That is because "[t]he UCL balances relaxed liability standards with limits on liability."

---

[5] *Accord Figy v. Frito-Lay N. Am., Inc*., 67 F. Supp. 3d 1075, 1091 (N.D. Cal. 2014) (it is "utterly implausible" that "reasonable consumers would see an undisputedly true statement about [one ingredient] and then draw conclusions about other totally unrelated nutritional characteristics . . . or conclude the Products 'made only positive contributions to a diet'").

[6] It is unclear whether Plaintiffs intend to bring omission-based misrepresentation claims.  The SAC references "omissions," but Plaintiffs do not allege Gerber omitted anything from its labels, or facts to support an omission-based claim.  SAC ¶¶ 9, 86, 101, 103, 124.  Plaintiffs have not shown any alleged omission is "contrary to a representation actually made by" Gerber or omitted a fact Gerber was obliged to disclose.  *Wilson v. Hewlett-Packard Co*., 668 F.3d 1136, 1141 (9th Cir. 2012).

1    *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (2009).  The same is true of the FAL.  *Id.*

2         Plaintiffs cannot seek restitution or injunctive relief because they have an adequate remedy

3    at law.  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).  They allege "only

4    hypothetically" that they lack an adequate legal remedy because they may not prevail on other

5    claims, SAC ¶¶ 134, 157, and, for their UCL "unfair" and "unlawful" claims, because there is no

6    such action at law.  *Id.* ¶ 156.  These arguments are "unavailing.  Where the claims pleaded by a

7    plaintiff may entitle her to an adequate remedy at law, equitable relief is unavailable."  *Rhynes v.*

8    *Stryker Corp.*, No. 10-5619 SC, 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011).

9         Plaintiffs cannot distinguish their UCL "unlawful" and "unfair" prong claims from their

10   fraud-based claims because they rely on the same factual allegations and advance the same theory:

11   that the Products bore misleading label claims.   Indeed, in a case involving essentially the same

12   claims brought by the same law firm and one of the same plaintiffs, this Court held "the plaintiffs'

13   unlawful-prong claim is [] substantively similar to their fraud claims."  *Howard v. Hain Celestial*

14   *Grp., Inc. ("Hain I")*, No. 22-CV-00527-VC, 2024 WL 718180, at *1 (N.D. Cal. Feb. 22, 2024).

15   Here, as in *Hain I*, Plaintiffs' claims "are all rooted in the same allegations."  *Hanscom v. Reynolds*

16   *Consumer Prod. LLC*, No. 21-CV-03434-JSW, 2022 WL 591466, at *3 (N.D. Cal. Jan. 21, 2022).

17        *Hanscom* also is analogous.   In *Hanscom*, Judge White held the plaintiff's similar

18   allegations that she may be "unable to prove certain elements of [her] claims" for damages did "not

19   establish that the damages she seeks are necessarily inadequate or incomplete."  *Id.*  There, as here,

20   the plaintiff sought "the same amount"—the price premium—in damages and restitution.  *Id.*  And

21   like Plaintiffs, the plaintiff in *Hanscom* alleged she only "lost money or property."  *Id.*  The plaintiff

22   thus "fail[ed] to satisfy *Sonner*'s requirement that she plead she lack[ed] an adequate legal remedy

23   with respect to" her restitution claims.   *Id.*; *accord Hanna v. Walmart Inc.*, No.

24   520CV01075MCSSHK, 2020 WL 7345680, at *6 (C.D. Cal. Nov. 4, 2020) (no equitable relief

25   where plaintiff did not "explain why no adequate remedy at law exists for [their] injury.").

26        Plaintiffs also are not entitled to injunctive relief, because they do not plausibly allege "an

27   actionable *certainly* impending injury."  *Hanna*, 2020 WL 7345680, at *7 (cleaned up; emphasis

28   in original).  *First*, no Plaintiff alleges he or she still buys Products for children under two.  "[T]hose

who bought the products for children two and up" cannot be injured by alleged label claims. *Hain I*, 2024 WL 718180, at *1. *Second*, Plaintiffs' allegations that they "would likely" purchase Gerber Products in the future, SAC ¶¶ 97, 103, 109, allege only a "*possible* future injury," not an "actionable *certainly* impending injury." *Hanna*, 2020 WL 7345680, at *7 (cleaned up; emphasis in original); *accord Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) (no Article III standing where plaintiff alleged she "would 'consider buying'" products in the future).

*Third*, allegations that Plaintiffs desire to purchase the Products again are implausible. Plaintiffs "ha[ve] not alleged any underlying belief in the utility" or healthiness of the Products. *Hanscom*, 2022 WL 591466, at *5. Indeed, they allege the Products are inherently "harmful both nutritionally and developmentally for children under two." SAC ¶ 3. That is analogous to *Hanscom*, where the plaintiffs brought UCL claims that trash bags were misleadingly labeled "Recycling" because "recyclables…should be placed in a collection bin *without the use* of a plastic bag or liner." *Hanscom*, 2022 WL 591466, at *5 (cleaned up; emphasis in original). The court held it was "implausible that Plaintiff would wish to purchase Reynolds' recycling bags in the future in light of her allegations that recycling bags in general add no benefit…." *Id.*

Here too, it is implausible that if Gerber simply removes the disputed label claims, Plaintiffs will wish to purchase Products they allege are "nutritionally and developmentally harmful." *See id.*[7] Plaintiffs also do not allege they would purchase the Products if they were reformulated, and regardless, allegations "wholly contingent on a reformation of the Product" are "too conjectural or hypothetical to establish Article III standing." *Grausz v. Kroger Co.*, No. 19-cv-00449-TWR-AGS, 2021 WL 5534706, at *6 (S.D. Cal. Jan. 22, 2021). Plaintiffs also seek "lost money"— a price premium—"for which legal damages does seem to be adequate." *Adams v. Haan*, No. Sacv 20-913 JVS, 2020 WL 5648605, at *3 (C.D. Cal. Sept. 3, 2020).

---

[7] *Accord Anthony v. Pharmavite*, No. 18-CV-02636-EMC, 2019 WL 109446, at *5 (N.D. Cal. Jan. 4, 2019) (no standing for injunctive relief where the "import of Plaintiffs' allegations" was the defendant could not "alter its advertising" to make its product "beneficial to Plaintiffs"); *Robles v. Gojo Indus., Inc.*, No. SACV21928JVSDFMX, 2022 WL 2163846, at *5 (C.D. Cal. Mar. 16, 2022), *aff'd*, No. 22-55627, 2023 WL 4946601 (9th Cir. Aug. 3, 2023) (no standing for injunctive relief where it was not "theoretically…possible, based on the facts alleged by the plaintiff, to formulate the product that they were allegedly misled into purchasing" so it is not purportedly harmful).

GERBER'S MOTION TO DISMISS;
Case No. 3:22-cv-04779-VC

**C.**     **Plaintiffs' UCL "Unlawful" Prong Claim Fails**

Plaintiffs' UCL "unlawful" prong claim also should be dismissed because it is preempted, or, in the alternative, to the extent it is based on lawful label statements. *Loder v. World Sav. Bank, N.A.*, No. C11-00053 TEH, 2011 WL 1884733, at *6-7 (N.D. Cal. May 18, 2011).

**1.**     **Plaintiffs' UCL "Unlawful" Claim Is Impliedly Preempted**

Plaintiffs improperly seek to enforce an FDA regulation, specifically 21 C.F.R. § 101.13(b)(3), through the guise of a false advertising lawsuit.  However, the Food, Drug, and Cosmetic Act ("FDCA") may be enforced only by the United States. 21 U.S.C. § 337(a).  Because California's Sherman Law expressly adopted and "originates from, is governed by, and terminates according to" the FDCA, a Sherman Law violation requires finding the FDCA has been violated. *Stengel v. Medtronic, Inc.*, 704 F.3d 1224, 1230 (9th Cir. 2013); Cal. Health & Safety Code § 110100(a).  The Supreme Court in *Buckman v. Plaintiffs' Legal Committee* held a private plaintiff cannot bring claims that "exist solely by virtue of the FDCA." 531 U.S. 341, 352-3 (2001); *accord Nexus Pharms., Inc. v. Cent. Admixture Pharmacy Servs., Inc.*, 48 F.4th 1040, 1049 (9th Cir. 2022) (Sherman Law claim preempted where "[t]he purported state law violation is of a law that says in substance 'comply with the FDCA'").  *Buckman* and its progeny thus preempt Plaintiffs' UCL "unlawful" claim, which relies on technical FDCA violations and does not "rely[] on traditional state tort law which had predated the federal enactments in question." *Buckman*, 531 U.S. at 353.[8]

**2.**     **Plaintiffs' UCL "Unlawful" Prong Claim Also Fails to the Extent it is Premised on Lawful Label Statements**

Should the Court find Plaintiffs' UCL "unlawful" prong claim is not preempted, Plaintiffs still improperly base their claim on lawful label statements that do not violate 21 C.F.R. § 101.13.

**a.**     **Some Challenged Claims Are Not Nutrient Content Claims**

This Court previously held "'made with' statements are not nutrient claims" because they are "intended to highlight an ingredient 'perceived to add value to the product,'" and dismissed

---

[8] This Court denied Gerber's prior motion on this basis, and the Ninth Circuit recently held analogous claims were not preempted. *Davidson*, 106 F.4th at 852. Gerber respectfully submits, as Judge Collins articulated in his dissent, that holding "wrongly equates the scope of the FDCA's express preemption with the scope of its implied preemption" and cannot be reconciled with earlier Ninth Circuit precedent. *Id.* at 854-866. Gerber thus preserves its argument on that ground.

1    Plaintiff Howard's "unlawful" claim "to the extent that it is premised on these statements."

2    *Howard*, 2023 WL 2716583, at *2. Plaintiffs reassert claims based on "made with" statements, *see*

3    SAC Ex. A, which should be dismissed again for the same reasons.

4          The same reasoning applies to claims referencing ingredients (*e.g.*, "¼ cup of farm-grown

5    veggies," "9 grams of whole grains per serving," "Gerber Natural for Toddlers brings the goodness

6    of naturally nutritious fruits selected and made with strict quality standards just for toddlers") or

7    generic qualities ("Grow Strong," "Wonderfoods awaken baby's love for nutritious foods"). *See*

8    SAC, Ex. A; SAC ¶¶ 40, 45, 46, 61, 81. These claims do not reference any of the nutrients defined

9    in 21 C.F.R. § 101.9(c), and thus do not suggest "the level (or range) of a nutrient" or "a nutrient is

10   absent or present in a certain amount." 21 C.F.R. § 101.13(b)(1). They also are not "made in

11   association with an explicit claim or statement about a nutrient." 21 C.F.R. § 101.13(b)(2). FDA

12   guidance clarifies that the word "nutritious" is not a nutrient content claim.[9]

13         This Court previously held "Grow Strong," "Wonderfoods awaken toddler's love for

14   nutritious foods," and "Gerber Natural for Toddlers brings the goodness of naturally nutritious

15   fruits selected and made with strict quality standards just for toddlers" are implied nutrient content

16   claims because "Gerber makes these statements alongside explicit claims about the nutrients in

17   their products." *Howard*, 2023 WL 2716583, at *2. Gerber respectfully submits that such a broad

18   reading is not supported by the regulatory text. The regulation offers "healthy, contains 3 grams

19   (g) of fat"—*i.e.*, a claim specifically connected to a statement about a nutrient—as an example of

20   a claim "made in association with an explicit claim or statement about a nutrient." Interpreting this

21   regulation, another district court held the statement "nutrition in every sip" was not an implied

22   nutrient content claim because it was not "made in connection with an explicit or implicit claim or

23   statement about a nutrient," even though the very next sentence referenced calcium. *Andrade-*

24   *Heymsfield v. Danone US, Inc.*, No. 19-CV-589-CAB-WVG, 2019 WL 3817948, at *1, 7 (S.D.

25   Cal. Aug. 14, 2019). The "Wonderfoods awaken toddler's love for nutritious foods" claim and

26   "Grow Strong" branding are set off from the rest of the label with colored backgrounds and are not

27

28   _____
[9] *Guidance For Industry A Labeling Guide For Restaurants and Other Retail Establishments Selling Away-from-home Foods*, 2008 WL 2155726, at *10.

- 11 -

connected to specific claims about nutrients.  The same is true of the "Gerber Natural for Toddlers brings…" claim.  It appears on the back label, while other challenged claims appear on the front.  These are more like the "nutrition in every sip" claim in *Andrade-Heymsfield* than the "healthy, contains 3 grams of fat" example in the regulation.  A broader reading would swallow up lawful label claims if a nutrient content claim is anywhere else on the package.

Claims referencing quantities of ingredients (such as fruits, vegetables, wholegrains, and superfoods) are not nutrient content claims because they do not make any express or implied representations about **nutrients**, as opposed to **ingredients**.  "[T]he regulations in question address statements about the set of nutrients a consumer sees in the Nutrition Facts panel, not any statements about any ingredients whatsoever."  *Clemmons v. Upfield US Inc*., 667 F. Supp. 3d 5, 15 (S.D.N.Y. 2023) (interpreting 21 C.F.R. §§ 101.9, 101.13(b), 101.65).  Plaintiffs do not allege how statements like "1 serving of fruit" or "1 serving of superfoods" "impl[y] the presence of a certain amount of any label nutrient," or "what nutrient, express or implied, would be implicated in labeling a product" as such.  *Id.*  These statements are lawful "valued ingredient" statements permitted under 21 C.F.R. § 101.65(b)(3), and not nutrient content claims under 21 C.F.R. § 101.13(b).  *See id.*

Therefore, these claims cannot be the basis for Plaintiffs' UCL "unlawful" prong claim.

### b.  Claims Including the Percentage of a Vitamin Are Lawful

Plaintiffs challenge claims expressly authorized on products intended for children under two:  "10% DV of Vit C, 15% Vit E and 20% Iron to help support a healthy IMMUNE SYSTEM," "20% DV Iron to help support healthy BRAIN DEVELOPMENT," and "Supports toddler's healthy growth with 15% DV of calcium and 2g protein."  SAC, Ex. A at Nos. 34, 35, 37, 38.  These are permissible structural claims that refer to the nutrient (Vitamin C, Vitamin E, iron, calcium), not the product.  *See* 21 C.F.R. § 101.93(f) (authorizing claims that "describe the role of the nutrient…intended to affect normal structure or function in humans" or "characterize the means by which a nutrient…acts to maintain such structure or function"); *Sanchez v. Nurture, Inc.*, 626 F. Supp. 3d 1107, 1118 (N.D. Cal. 2022) (holding "With iron to help support brain development" is a structural claim that "describe[s] the function of the nutrient, not the product itself").

This Court previously denied Gerber's motion to dismiss on this ground, holding the claims

- 12 -

AMERICAS 117949192

"go[] far beyond what the FDA has authorized by regulation," and the regulation governing "structure/function" claims "applies only to dietary supplements." *Howard*, 2023 WL 2716583, at *2 and n.2.  But as another district court recognized "[t]he FDA interprets structure/function claims, and health claims, consistently across dietary supplements and conventional foods." *Andrade-Heymsfield*, 2019 WL 3817948, at *6 (interpreting 65 Fed. Reg. 1000, 1034 and dismissing claim that "Maximum Calcium Absorption" label on coconut milk was an unlawful health claim).

### D.    Plaintiffs Lack Standing for Claims Based on Statements They Did Not Rely On and Products They Did Not Purchase

Plaintiffs lack standing to assert claims based on many Products in the SAC.[10]  For Article III and statutory standing, Plaintiffs must "plead and prove actual reliance" on the allegedly deceptive statement.  *In re Tobacco II Cases*, 207 P.3d 20, 40 (Cal. 2009).  Courts thus hold a party "does not have standing to challenge statements or advertisements that she never saw," *see, e.g.*, *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1197 (N.D. Cal. 2014), or did not rely on, *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010); *see also Howard v. Hain Celestial Grp., Inc. ("Hain II")*, No. 22-CV-00527-VC, 2024 WL 4369648, at *3 (N.D. Cal. Oct. 1, 2024) (Chhabria, J.) ("unlawful-prong claims require a showing of reliance on the aspects of a label that make it unlawful").  Plaintiffs also may only plead claims based on unpurchased products that are "substantially similar" to Products they did purchase.  *Wilson v. Frito-Lay N. Am.*, 961 F. Supp. 2d 1134, 1140-41 (N.D. Cal. 2013).

Plaintiffs seek to represent a class who purchased a "non-exhaustive list" of Gerber products.  SAC ¶ 14.  But Rule 9(b) requires Plaintiffs to plead the content of labels and kinds of products they dispute.  *See, e.g.*, *Gitson v. Trader Joe's Co.*, No. 13-CV-01333-WHO, 2013 WL 5513711, at *4 (N.D. Cal. Oct. 4, 2013).  Plaintiffs thus may proceed only on products and claims they specifically allege.

Plaintiffs collectively allege relying on only three protein-related statements: "2g protein," "2 grams of Plant Protein," and "Nutritious, plant-based, and specially designed to provide 2 grams of protein" on three Products.  *See* SAC ¶¶ 93, 99, 105, Ex. A.  Plaintiffs challenge many non-

---

[10] SAC Exhibit A lists the disputed products.  The second column identifies challenged statements.

1    protein claims (including seven new claims in their SAC) about vegetables, fruit, whole grains,

2    superfoods, fiber, Vitamins C and E, iron, and calcium, and claims not concerning any ingredient

3    or food group at all (e.g., "Grow Strong"), but do not specifically allege they relied on any of those

4    statements.  *See id*.  Plaintiffs' generic allegation they "read[] the nutrient content claims on the

5    Product labels," SAC ¶¶ 93, 99, 105, is insufficient.  Rule 9(b) requires them to "unambiguously

6    specify…the particular statements" they "allegedly relied on when making [their] purchases."  *See*

7    *Maxwell v. Unilever U.S., Inc*., No. 5:12–CV–01736–EJD, 2013 WL 1435232, at *5 (N.D. Cal.

8    Apr. 9, 2013); *accord Hain II*, 2024 WL 4369648, at *3 ("plaintiffs bringing unlawful-prong claims

9    must still show reliance—not just on the label as a whole, but on the aspects of the label that make

10   it unlawful").  Plaintiffs thus cannot assert claims based on products without protein statements.[11]

11        Plaintiffs also lack standing to assert claims based on unpurchased products from unrelated

12   lines.  Plaintiffs must specifically allege the unpurchased products are of the same kind and

13   comprised of largely the same ingredients as products they purchased, and had the same labeling

14   they allegedly relied on in products they purchased.  *See Wilson*, 961 F. Supp. 2d at 1140-41; *accord*

15   *Sanchez*, 626 F. Supp. 3d at 1117 (no standing for products with "different ingredients from the

16   purchased products").  Plaintiffs challenge 33 products from five lines from which they purchased

17   no products:  Veggie Power, Pick Ups, Lil' Sticks, Mealtime Harvest Bowl, and Grain & Grow.

18   *See* SAC ¶¶ 91 [sic], 75 [sic], 76 [sic] (alleging purchases from Mealtime for Toddler, Pouches,

19   Lil' Crunchies, Wonderfoods, and Natural lines).  They do not, and cannot, allege products in these

20   lines are comparable to those they purchased.  *See Sanchez*, 626 F. Supp. 3d 1107, 1116-17.

21        In previously allowing Plaintiff Howard to assert claims for unpurchased products, this

22   Court cited *Miller v. Ghirardelli Chocolate Co*., 912 F. Supp. 2d 861 (N.D. Cal. 2012) and *Kellman*

23   *v. Whole Foods Market, Inc*., 313 F. Supp. 3d 1031 (N.D. Cal. 2018).  *Howard*, 2023 WL 2716583,

24   at *1.  In *Miller*, the plaintiff lacked standing to sue on unpurchased products because he did not

25   allege facts showing "the same basic mislabeling practice across different product flavors," and the

26   unpurchased products "look[ed] different," were "labeled differently," and had different

27

28   _____

[11] Specifically, Plaintiffs lack standing to assert claims based on products numbered as 5, 7-9, 12-17, 19-20, 32-33, 36, 39, 47, and 49-52 in Exhibit A to Plaintiffs' SAC.

ingredients and flavors from purchased ones.   *Miller*, 912 F. Supp. 2d at 870.  The same is true here.  With respect to *Kellman*, Gerber respectfully submits that the case is distinguishable, as it involved purchased and unpurchased hygiene products that "share[d] common ingredients" and the same "hypoallergenic" claim.  313 F. Supp. at 1054.  Here, the unpurchased products materially vary from the purchased ones, with different ingredients, textures, flavors, labels, and packaging.[12]

The labels also differ in type, location, text, font, size, and claims, requiring individualized fact-specific analyses to determine whether reasonable consumers would be misled.  In such cases, courts have held plaintiffs may only pursue claims based on products with "identical labels" to those they purchased.  *See, e.g., Ang v. Bimbo Bakeries USA, Inc*., No. 13-CV-01196-WHO, 2014 WL 1024182, at *9 (N.D. Cal. Mar. 13, 2014) (no standing for non-purchased products where claim placement and product types required "fact-specific analyses").

For these reasons, Plaintiffs cannot base claims on unrelated, unpurchased products.[13]

**E.     Plaintiffs' UCL "Unfair" Prong and Unjust Enrichment Claims Fail**

Plaintiffs' UCL "unfair" prong claim fails because it "overlaps entirely" with Plaintiffs' invalid fraud claims.  *See, e.g.*, *Hauck v. Advanced Micro Devices, Inc*., No. 18-CV-00447-LHK, 2019 WL 1493356, at *15 (N.D. Cal. Apr. 4, 2019) (UCL "unfair" prong claim premised on the same allegedly fraudulent omissions as fraud claims cannot survive).  Plaintiffs' unjust enrichment claim fails for the same reason.  *See Garrison v. Whole Foods Mkt. Grp., Inc*., No. 13-CV-05222-VC, 2014 WL 2451290, at *6 (N.D. Cal. June 2, 2014) (Chhabria, J.).

**IV.     <u>CONCLUSION</u>**

Gerber respectfully requests the Court grant its motion to dismiss.

Dated:  October 8, 2024                              WHITE & CASE LLP

                                                    By:   */s/ Bryan A. Merryman*
                                                          Bryan A. Merryman

---

[12] *Compare*, *e.g.*, SAC, Ex. A, Rows 32 (unpurchased "Mealtime Harvest Bowl Spanish-Style Sofrito" with grains and vegetables, in plastic bowl, with no protein claim) and 43 (unpurchased "Lil' Sticks Chicken" with chicken sticks, in a glass jar) *with* Rows 1 (purchased "Organic for Toddler Plant-tastic Banana Berry & Veggie Smash" puree pouch with no vegetable or meat) and 45 (purchased "Lil' Crunchies Veggie Dip" baked grain snacks with zero sugar, in re-closable cylindrical container).

[13] Products numbered as 5, 7-9, 12-17, 19-20, 32-33, 36, 39, 47, and 49-52 in SAC Exhibit A.

- 15 -

1

## CERTIFICATE OF SERVICE

2

I hereby certify that a true and correct copy of the foregoing document was filed in the

3

Court's CM/ECF System this 8th day of October, 2024, and thereby served on all counsel of record.

4

*/s/ Bryan A. Merryman*

5

Bryan A. Merryman

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 1 -

AMERICAS 117949192