**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Hayley A. Reynolds (State Bar No. 306427)
  hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY HOWARD, ERI NOGUCHI, and SCOTT DIAS, on behalf of themselves, the general public, and those similarly situated,<br><br>             Plaintiffs,<br><br>   v.<br><br>GERBER PRODUCTS COMPANY,<br><br>             Defendant. | Case No.: 3:22-cv-04779-VC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Hearing Date:   December 12, 2024<br>Hearing Time:   10:00 a.m.<br>Courtroom:      4<br>Judge:           Hon. Vince Chhabria |

## **TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................................. 1

II.    ARGUMENT ................................................................................................................... 2

    A.   Plaintiffs Adequately Plead Their Fraud Claims. ................................................... 4

    B.   This Court and the Ninth Circuit in *Sprout* Require Rejecting Gerber's Remaining
        Arguments ................................................................................................................ 9

       i.    Gerber ignores the primary holding in *Sprout* and again argues that *Buckman*
           impliedly preempts Plaintiffs claims. ........................................................... 10

       ii.   Plaintiffs May Plead Legal and Equitable Claims at This Stage. .................. 10

       iii.  Gerber's Implied Nutrient Content Claims Are Unlawful. ............................ 13

       iv.   Plaintiffs' UCL "Unfair" Prong and Unjust Enrichment Claims May Proceed. .......... 15

  III.   CONCLUSION ............................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**

*Amans v. Tesla, Inc.*, No. 21-cv-03577-VC, 2022 U.S. Dist. LEXIS 133028 (N.D. Cal. July 26, 2022)......................................................................................................................12

*Andrade-Heymsfield v. Danone US, Inc.*, No. 19-cv-589-CAB-WVG, 2019 U.S. Dist. LEXIS 137667 (S.D. Cal. Aug. 14, 2019) ....................................................................17

*Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-01196-WHO, 2013 U.S. Dist. LEXIS 138897 (N.D. Cal. Sep. 25, 2013)...........................................................................................16

*Bazarganfard v. Club 360 LLC*, No. 2:21-cv-02272-CBM-PLA(x), 2023 U.S. Dist. LEXIS 38210 (C.D. Cal. Jan. 26, 2023) ..........................................................................18

*Bruton v. Gerber Prods. Co.*, No. 15-15174, 2017 U.S. App. LEXIS 12833 (9th Cir. July 17, 2017) .............................................................................................................2

*Buckman v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001)..........................................1, 2, 3, 11

*Cepelak v. HP Inc.*, No. 20-cv-02450-VC, 2021 U.S. Dist. LEXIS 221360 (N.D. Cal. Nov. 15, 2021) ................................................................................................................11

*Cnty. of Riverside v. McLaughlin*, 500 U.S. 44 (1991)....................................................14

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018)...................................3, 4, 13, 14

*Davidson v. Sprout*, 106 F.4th 842 (9th Cir. 2024).................................................. passim

*Day v. Advanced Micro Devices, Inc.*, No. 22-cv-04305-VC, 2023 U.S. Dist. LEXIS 35147 (N.D. Cal. Mar. 2, 2023)................................................................................12

*Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016) ...........................................................2

*Elgindy v. AGA Service Co.*, No. 20-CV-06304-JST, 2021 WL 1176535 (N.D. Cal. 2021) ........11

*Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052 (N.D. Cal. 2017) ...............................9

*Hanscom v. Reynolds Consumer Prods. LLC* is misplaced. No. 21-cv-03434-JSW, 2022 U.S. Dist. LEXIS 34057 (N.D. Cal. Jan. 21, 2022) .....................................................12

*In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 19-md-02913-WHO, 2020 U.S. Dist. LEXIS 197766 (N.D. Cal. Oct. 23, 2020) ..................................12

*In re S.C. Johnson & Son, Inc.*, 2021 U.S. Dist. LEXIS 141101 (N.D. Cal. July 28, 2021).........14

*Jones v. Johnson*, 781 F.2d 769 (9th Cir. 1986) ................................................................8

*Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002) ......................................................................3

*Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938 (N.D. Cal. 2017)........................9

*Lanovaz v. Twinnings N. Am., Inc.*, 726 F. App'x 590 (9th Cir. 2018) ............................14

*Los Angeles v. Lyons*, 461 U.S. 95 (1983) ........................................................................14

*Roe v. Wade*, 410 U.S. 113 (1973)....................................................................................14

*Sanchez v. Nurture, Inc.*, 626 F. Supp. 3d 1107 (N.D. Cal. 2022) ..................................18

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986) ....................18

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ........................................4

*Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771 (9th Cir. Jul. 17, 2024)...................3

*Williams v. Gerber Prods. Co.*, 552 F. 3d 934 (9th Cir. 2008).......................................3

*Won Kyung Hwang v. Ohso Clean, Inc.*, 2013 U.S. Dist. LEXIS 54002 (N.D. Cal. April
  16, 2013) ..................................................................................................................................5

**Statutes**

NLEA § 403A ..............................................................................................................................10

**Regulations**

21 C.F.R. § 101.13(b)(2)(i) ..........................................................................................................13

21 C.F.R. § 101.13(b)(2)(ii) .........................................................................................................14

59 Fed. Reg. at 24235 ..................................................................................................................13

PLS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SAC – CASE NO. 3:22-CV-04779-VC

## I.    INTRODUCTION

Defendant Gerber Products Company's ("Defendant" or "Gerber") motion to dismiss the Second Amended Complaint ("SAC") is nothing more than a weak attempt to revive arguments that have been rejected by both the Ninth Circuit in *Davidson v. Sprout*, 106 F.4th 842 (9th Cir. 2024) and this Court in its prior Order on Gerber's Motion to Dismiss (ECF 25). Rather than applying the Ninth Circuit's clear holding, Gerber throws out every stale argument it can muster. Indeed, it even goes so far as to ignore *Sprout's* main holding regarding implied preemption under *Buckman v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001). At bottom, Gerber's only distinct argument is that the SAC does not plausibly allege why the unlawfully labeled Products are harmful for children under two years old. But the SAC meticulously lays out two harms associated with each of Gerber's Products for children under the age of two. This is clearly sufficient under the pleading standard.

Plaintiffs filed a SAC in the wake of *Sprout*. In *Sprout*, the Ninth Circuit addressed nearly identical claims to those at issue here and held that the plaintiffs plausibly alleged that consumers could interpret the labels to mean that the products are healthy, but that the complaint failed to plausibly allege the products were harmful. Thus, on amendment, Plaintiffs here have added detailed allegations explaining the harms of the Products. The only issue up for debate after *Sprout* is whether Plaintiffs' new allegations are sufficient to allege that the Products are harmful such that consumers are deceived by the labels.

The SAC enhances the allegations of harm caused by Gerber's Products by including detailed allegations as to the levels of sugar, the levels of sodium, and the pouch format of the Products. The WHO recommends that products with a sugar density of greater than 30% should carry a warning label, and the SAC outlines each Product that exceeds that level including the Wonderfoods Pouches, the Veggie Power pouches, the Plantastic Pouches, and the Grow Strong pouches. SAC ¶¶ 57–65; *see id.*, Ex. A (product chart with sugar density and sodium for each product). The SAC also adds factual allegations regarding the harmful levels of sodium in the Lil' Crunchies, Mealtime Products, and Lil' Sticks Products. SAC ¶¶ 74–82. And finally, the SAC expands on the reasons why the pouch format is harmful for children under two, including

the reasons the WHO recommends pouches not be offered for children over 12 months. SAC ¶¶ 62–69.  Thus, the SAC easily meets the *Sprout* standard.

Rather than apply *Sprout*, Gerber takes a kitchen sink approach, but nothing ultimately justifies deviating from this Court's prior holding that "the labels communicate a message that the products are healthy for children, and that the products are actually harmful." ECF 25 at 4. Shockingly, while invoking *Sprout*, Gerber ignores its main holding: that *Buckman* does not impliedly preempt Plaintiffs' unlawful claims. Gerber wholly ignores this conclusion and asks this Court to disagree with the Ninth Circuit and find Plaintiffs' claims preempted. ECF 72 at 10.

This Court has already rejected the remainder of Gerber's arguments which do not warrant reconsideration after *Sprout*. Plaintiffs may plead legal and equitable claims in the alternative at this stage. *See* ECF 25 at 1–2. Gerber's implied nutrient content claims are unlawful. *Id.* at 2–4. Plaintiffs have standing to assert claims for substantially similar products. *Id.* at 1–2. And Plaintiffs' unlawful claims and unjust enrichment claim may proceed. *Id.* at 6. Based on the foregoing, the Court should fully deny the motion to dismiss.

## II.    ARGUMENT

Plaintiffs' fraud claims are governed by the "reasonable consumer" test and Plaintiffs need only allege that it is plausible "that members of the public are likely to be deceived." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (citations omitted).[1] The FAL, CLRA, and UCL "prohibit not only false advertising, but also advertising that is 'either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 777 (9th Cir. Jul. 17, 2024) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)). "California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision [at the pleadings stage]." *Id.* (quoting *Williams v. Gerber Prods. Co.*, 552 F. 3d 934, 938-39 (9th Cir. 2008)). "Dismissal is appropriate when 'the advertisement itself [makes] it impossible for the plaintiff to prove that a reasonable consumer [is] likely to be deceived.'" *Id.* (quoting

---

[1] Plaintiffs' UCL unlawfulness claims are not governed by the reasonable consumer standard. *Bruton v. Gerber Prods. Co.*, No. 15-15174, 2017 U.S. App. LEXIS 12833, at *5–6 (9th Cir. July 17, 2017).

*Williams*, 552 F. 3d at 938–39. But the Ninth Circuit has repeatedly cautioned that dismissal at the pleading stage is "rare." *Id.* Just like in *Whiteside* and *Williams*, this is not a "rare" case where it is appropriate to determine deception as a matter of law.

*Sprout* unequivocally announced that UCL unlawfulness claims based on violations of the Sherman law food labeling regulations are not impliedly preempted under *Buckman*. *Sprout*, 106 F.4th at 852 (holding "the FDCA does not impliedly preempt private enforcement of the Sherman Law."). For the fraud claims, the Ninth Circuit did not announce any new standards of law, instead, it merely affirmed the district court's conclusion that the complaint failed to sufficiently state a fraud claim. *See id.* (citing *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018)). The Ninth Circuit did not disturb the district court's holding that the "plaintiffs had sufficiently alleged what the misstatement was, i.e., that the nutrient content claims imply that the products provide health benefits for babies." *Id.* at 853. It instead explained that the complaint failed to allege with sufficient particularity that the products at issue were harmful, holding that the allegations were "largely unspecific to Sprout's products" and that plaintiffs' one allegation related to "high amounts of free sugars" did not explain "at what level sugars become harmful or why the levels of sugar in these products, in particular, could cause harm." *Id.* Without those allegations, plaintiff's fraud-based claims failed. *Id.*

However, *Sprout* affirmed much of this Court's prior Order, including its holdings on the unlawfulness claims and unjust enrichment. *Id.* at 846 (holding that claims such as "3g of Protein, 5g of Fiber and 300mg Omega-3 from Chia ALA" are the "claims on the labels of the Sprout pouches [which] appear to be what the FDA regulation and, by extension, the Sherman Law prohibit."); *id.* at 850 ("We therefore hold that the FDCA does not impliedly preempt plaintiffs' Sherman Law claims."); *id.* at 853 ("The district court dismissed the unjust enrichment claim because, after dismissing all other claims, there was no underlying basis for recovery. In light of our reversal on the Sherman Law claim, an additional claim survives. We thus reverse the district court's dismissal of the unjust enrichment claim."). *Sprout's* remand of the unlawfulness claims also necessarily affirms the Court's prior holding for standing.

A.      **Plaintiffs Adequately Plead Their Fraud Claims.**

To satisfy Rule 9(b), a complaint must allege the "who, what, when, where, and how" of the misrepresentations. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). The SAC satisfies this test. Plaintiffs allege that Gerber (who) misrepresented the healthiness of the Products (what) through unlawful and deceptive labels on the Products' front labels (where) to consumers at the time of purchase (when) because the Products are harmful for children under two (how). *See* SAC ¶¶ 34–82; *see also Won Kyung Hwang v. Ohso Clean, Inc.*, 2013 U.S. Dist. LEXIS 54002, *61 (N.D. Cal. April 16, 2013) (plaintiff satisfied Rule 9(b) "by identifying specific products and statements at issue, as well as when and where she purchased one of Defendants' products.").

Gerber focuses on the "how" of Plaintiffs fraud claims. But Plaintiffs plausibly allege that Gerber seeks to "take advantage of parents' and caregivers' desires to give infants and young children nutritious food with the advertised vitamins, minerals, and macronutrients, leading them to believe the products are healthy, children need more of the advertised nutritional content, and distracting consumers from the undesirable nutritional qualities of the Products." SAC ¶ 82. "The Products are actually harmful for children under two both nutritionally and developmentally because of the sugar content, the pouch format, and the sodium content of the foods." *Id.*

After *Sprout*, Plaintiffs amended their complaint to add detailed factual allegations regarding the harmful amounts of sugar and/or salt in the Products. In *Sprout*, the Ninth Circuit affirmed the district court's dismissal on the ground that the plaintiffs failed to allege fraud with particularity regarding nutrient content claims. 106 F.4th at 853. The Court first noted that the district court correctly found that the plaintiffs pled the "what" of their fraud claims, "i.e., that the nutrient content claims imply that the products provide health benefits for babies." *Id.* However, the court found that the plaintiffs "failed to sufficiently allege why this implied message was false, i.e., that the products were in fact harmful." *Id.* The court noted that plaintiffs relied on only "two sets of allegations" for their fraud claims. *Id.* The first allegation was that the "that Sprout's products contain high amounts of sugar and that sugars in pureed,

pouch-based foods can lead to health issues such as tooth decay." *Id.* The second allegation was that "the complaint cites to several articles and reports suggesting that pouch-based foods may lead to long-term health risks and hinder babies' development." *Id.* The court held these two allegations were "largely unspecific to [the defendant's] products." *Id.* The court stated that the plaintiffs' allegations regarding amounts of free sugars was more specific to the defendant but it lacked context. *Id.* ("The exception is their allegation that the products 'contain high amounts of free sugars' accompanied by a list of the grams of sugar in some of the products. But as the district court rightly noted, this allegation lacks context. Plaintiffs do not explain at what level sugars become harmful or why the levels of sugar in these products, in particular, could cause harm."). Because the district court correctly noted these deficiencies and plaintiffs chose to stand on their complaint for appeal, the court affirmed that the plaintiffs failed to allege fraud with particularity. *Id.*

The SAC now contains additional detailed factual allegations specific to Gerber's products that satisfy *Sprout*. Gerber's argument that Plaintiffs "still fail to allege 'at what level sugars become harmful or why the levels of sugar **in these products, in particular**, could cause harm" raises questions as to what complaint Gerber is reading. ECF 72 at 4–5 (emphasis in original). The SAC contains additional factual allegations from child nutrition experts, including the World Health Organization ("WHO"), regarding the levels at which sugar and sodium are harmful. *Id.* ¶¶ 48–60; *id.* ¶¶ 74–78. For example, regarding total sugar, the SAC explains that according to the WHO, products with "more than 30% of the energy from sugar" should "carry a front-of-pack warning label to help consumers make healthier choices." SAC ¶ 59. The SAC then gives the formula for calculating what percent of the energy (i.e., calories) in a product come from sugar: (total sugar grams per specified product weight ÷ kcal per specified product weight) x 400. *Id*. Using this formula, the SAC includes calculations for the percent energy from sugar for each of Gerber's pouch Products to support the fact that "[e]very single pouch Product has a sugar density about 30%, which is the level at which the WHO recommends a front-of-pack 'indicator label' for products intended for infants and toddlers because of the health risks associated with that level of sugar." *Id*. ¶ 60; *see also id*. (Wonderfoods pouches contain 50–89%

energy from sugar); *id.* ¶ 61 (Veggie Power pouches contain 47–67% energy from sugar); *id.* ¶ 62 (Plant-tastic pouches contain 34–46% energy from sugar); *id.* ¶ 64 (Grow Strong pouches contain 40–50% energy from sugar). The SAC describes these risks in detail, including the fact that the "high sugar profile will encourage a preference for sweeter foods that contribute to noncommunicable diseases and obesity, contribute to dental decay, cause spikes in blood sugar, and can lead to picky eating." *See*, *e.g.*, *id.*; *see also id.* ¶¶ 50–65. The SAC contains detailed allegations about why each specific pouch product is harmful for children under two, including why the nutrient content claims are misleading in the context of each pouch label. ECF 71-1 (product chart with sugar density); *see also* SAC ¶ 60 (Wonderfood pouches); *id.* ¶ 61 (Veggie Power pouches); *id.* ¶¶ 62–63 (Plant-tastic pouches); *id.* ¶ 64 (Grow Strong pouches); *id.* ¶¶ 66–73 (pouch format harm).

The SAC also addresses the harmful levels of added sugar. USDA guidance recommends children under two completely "avoid foods and beverages with added sugars." *Id.* ¶ 65. This is because children need to receive "the most nutrient dense foods available in the household" (*id.* ¶ 45) and sugar "skews the energy density of low nutrient foods" (*id.* ¶ 59). This means that foods with lower nutrient levels are providing higher levels of energy, meaning the child will not consume nutrient dense foods to fulfill their energy needs. The SAC then identifies each Product that has added sugars. *Id.* ¶ 65 ("[T]he Spaghetti Rings in Meat Sauce have 3 grams added sugar, the Fruit & Yogurt Strawberry Banana pouch has 5 grams added sugar, and the Grain & Grow bars have 4 grams of added sugar."). This is clearly sufficient to withstand a motion to dismiss under *Sprout*. 106 F.4th at 853 (identifying the need for "what level sugars become harmful or why the levels of sugar in these products, in particular, could cause harm.").

The SAC also contains specific allegations as to the harmful sodium levels found in the Products. ECF 71-1 (product chart with sodium levels); SAC ¶ 79 (Mealtime products); *id.* ¶ 80 (Lil' Sticks products); *id.* ¶ 81 (Lil' Crunchies products). For example, the Lil' Sticks are "glorified hotdogs" that "are highly processed salty food[]" claiming "9g protein per serving" to distract consumers from the fact that the "chicken sticks [contain] 268mg sodium per 100g and the turkey sticks [contain] 296mg sodium per 100g." *Id.* ¶ 80. The Lil' Crunchies also range

from, "71mg sodium per 100g to 500mg sodium per 100g." *Id.* ¶ 81. "These Products claim to be for children 8+ months, and include claims that the Products include '2g of whole grains,' advertise that the Products are 'made with whole grain sorghum just for your little one,' and are 'perfectly sized pieces, easy to pick up, and help develop baby's pincer grasp for self-feeding.' As recognized by the WHO, these types of claims 'give the impression of being optimum foods' and 'imply superiority over other foods' which makes it 'challenging to identify healthy products from the many on the market.'" *Id.* ¶ 81. "But the Products exceed the recommended sodium limits by a factor of 100, which will harm infants' kidneys and cause infants to develop a taste profile that negatively impacts current and future health." *Id.* "Thus, consumers will be misled to believe that because of the whole grain content and intention of being fed to infants, the Products will be healthy for children under two." *Id.* Collectively, these allegations address why the "products were in fact harmful." *Sprout*, 106 F.4th at 853. As such, the Court should deny the motion to dismiss because the SAC includes detailed allegations regarding how the nutrient content claims mislead consumers into believing the Products are healthy, but the Products are actually harmful due to their high sodium content.

Gerber claims that Plaintiffs rely on generalized allegations which require "many inferential leaps." ECF 72 at 4. In its argument, Gerber addresses only one alleged harm that will result from the consumption of its sugary Products: the development of a preference for sweet foods. *Id*. Gerber ignores that Plaintiffs have identified several health risks associated with excess sugar consumption for children under two, including obesity, dental decay, and blood sugar issues. *See* SAC ¶¶ 47–65. Moreover, the law does not require that a single consumption of the Product be harmful for the claims to be misleading, and the pleading stage is not the appropriate time to weigh evidence on the harm versus benefits of the Products. *Jones v. Johnson*, 781 F.2d 769, 722 n.1 (9th Cir. 1986) ("Any weighing of evidence is inappropriate on a 12(b)(6) motion."). Eating one candy bar may not cause diabetes, but that doesn't mean a company could label it as healthy.

For example, in *Krommenhock v. Post Foods, LLC*, the court denied a motion to dismiss where the "crux" of the claim was that the defendant's "use of prominent marketing terms

expressly or implicitly advertising the products as healthy were misleading because the amount

of sugar in the product made those claims false." 255 F. Supp. 3d 938, 964–65 (N.D. Cal. 2017).

The plaintiffs there challenged claims that included use of the terms "grain," "fiber," and "real"

(e.g., "real bananas"), and argued that the amount of added sugar in the products rendered the

products unhealthy "such that their regular consumption is likely to contribute to excess added

sugar consumption and, thereby, increased risk for and contraction of chronic disease." *Id.* at

946. As evident from the allegations, it was not just one serving of the products that resulted in

harm, but the contribution to an unhealthy diet that rendered the claims misleading. *Id.*

*Krommenhock* rejected the same arguments Gerber makes here, concluding "this is not the

appropriate time to weigh the competing harms and benefits from [Defendant's] products . . . It

is sufficient that plaintiffs have a plausible scientific basis for their consumer protection claims."

*Id.* at 963; *see Krommenhock v. Post Foods, LLC*, No. 16-cv-04958-WHO, 2018 U.S. Dist.

LEXIS 42938, at *11 (N.D. Cal. Mar. 15, 2018) ("Because plaintiffs have cited significant

evidence linking consumption of excessive sugar to significant health problems, they survive the

motion to dismiss."); *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1066 (N.D. Cal. 2017)

("Here, as discussed above, Plaintiff provides scientific studies that link added sugar to

cardiovascular disease, metabolic syndrome, and diabetes."). Put simply, just because *more* harm

will come in the future from frequent consumption of Gerber's products does not negate the

current informational injury and economic injury (paying more for a product they think is

healthy) putative class members are suffering because of Gerber's unlawful labeling practices.

As such, Plaintiffs have suffered more than a bare "procedural violation." ECF 72 at 7.

Gerber next argues that the excess sodium claim for the Products fail because "Plaintiffs

do not, and cannot, identify a comparable FDA or USDA limit." ECF 72 at 4. But Plaintiffs are

under no obligation to identify a comparable FDA or USDA limit for purposes of their fraud

claims.[2] Plaintiffs need only plausibly allege the claims mislead reasonable consumers into

---

[2] Even so, Plaintiffs have identified the Dietary Guidelines for Americans which recommends limiting sodium intake given the increased risk of cardiovascular diseases and hypertension, among other things. SAC ¶¶ 74–75. The fact that the USDA has *daily* limits for sodium does not prove that it does not recommend limiting on a per-food basis.

believing the Products are healthy when in fact they are not because, among other issues

identified in the SAC, they contain excess levels of sodium for children under two years of age.

Plaintiffs have done so. SAC ¶¶ 74–82; *see* ECF 71-1 (product list). The WHO is a global leader

in developing health standards and any disagreements Gerber may have with the conclusions of

the WHO is a factual issue not appropriate for resolution at the motion to dismiss stage.

Gerber next analyzes the "pouch theory" in isolation. ECF 72 at 5. As explained above,

the pouch format is only one reason the Products are unhealthy and not recommended for

children under two. Even so, Plaintiffs have added allegations in the SAC that further expound

on the fact that pouches are harmful for children under two, including that the WHO cautions

against pouches because "sucking from a pouch does not encourage the learning of, and use of,

chewing skills; children cannot distinguish what it is they are eating, and cannot see or smell the

food easily; children who are given smooth foods in pouches for longer periods may become

fussier eaters; children develop fine motor skills when picking up food or playing with it; pureed

fruit and vegetables in pouches are high in free sugars, and sucking these foods across the teeth

may contribute to tooth decay; there is no portion control if food is eaten directly from the

pouch; and there may be considerable food waste." SAC ¶ 70; *see also* SAC ¶¶ 66–73. Plaintiffs

have included detailed factual allegations from which the Court can conclude that the pouch

Products mislead consumers into believing the Products are healthy when, in fact, they are

harmful.[3]

**B.    This Court and the Ninth Circuit in *Sprout* Require Rejecting Gerber's Remaining Arguments**

The Ninth Circuit's decision in *Sprout* merits only a narrow reconsideration of this

Court's prior Order. *Sprout* did not announce a new standard, and in fact, reaffirmed most of this

Court's prior holding. 106 F.4th at 844 ("The panel affirmed the district court's dismissal of

plaintiffs' fraud-based claims, and reversed the district court's dismissal of plaintiffs' California

---

[3] Gerber claims that "[c]ontrolling law precludes Plaintiffs' new theory that Gerber misstated the protein content of 'Plant-tastic' products." ECF 72 at 5. But Plaintiffs assert no new claims and have not pled an independent cause of action based on 21 C.F.R. § 101.9. SAC ¶¶ 118–164. Plaintiffs merely assert this fact to show the misleading nature of Gerber's product labels.

Sherman Law claim and unjust enrichment claim, in a putative class action challenging the labels on Sprout Foods, Inc.'s baby food pouches.").

### i. Gerber ignores the primary holding in *Sprout* and again argues that *Buckman* impliedly preempts Plaintiffs claims.

Gerber ignores the Ninth Circuit's main holding in *Sprout* and recycles its prior arguments that *Buckman* impliedly preempts Plaintiffs' claims. ECF 72 at 10. But this Court need not engage with such gamesmanship because *Sprout* settled this question. After extensive analysis of Supreme Court and Ninth Circuit precedent, *Sprout* holds that "the FDCA does not impliedly preempt plaintiffs' Sherman Law claims. Because the Sherman Law incorporates federal standards, the state requirements at issue are identical to their federal counterparts, and thus permitted by § 343-1 (NLEA § 403A). Plaintiffs' claim is that [the defendant] violated these parallel state requirements. Because the FDCA places no limitations on enforcement of these state parallels, plaintiffs' Sherman Law claim is not preempted." 106 F.4th at 850.

### ii. Plaintiffs May Plead Legal and Equitable Claims at This Stage.

Again, despite this Court's previous rejection of Gerber's arguments under *Sonner*, Gerber again argues that "Plaintiffs cannot seek restitution or injunctive relief because they have an adequate remedy at law." ECF 72 at 8; *see* ECF 25 at 1 (citing *Elgindy v. AGA Service Co.*, No. 20-CV-06304-JST, 2021 WL 1176535, at *15 (N.D. Cal. 2021)). Time and again this Court has rejected the notion that "*Sonner* prevents parties from pleading claims for legal and equitable relief in the alternative." *Cepelak v. HP Inc.*, No. 20-cv-02450-VC, 2021 U.S. Dist. LEXIS 221360, at *5–6 (N.D. Cal. Nov. 15, 2021) (J. Chhabria); *see, e.g, Day v. Advanced Micro Devices, Inc.*, No. 22-cv-04305-VC, 2023 U.S. Dist. LEXIS 35147, at *2 (N.D. Cal. Mar. 2, 2023) (J. Chhabria); *Amans v. Tesla, Inc.*, No. 21-cv-03577-VC, 2022 U.S. Dist. LEXIS 133028, at *4 (N.D. Cal. July 26, 2022) (J. Chhabria). The SAC makes clear that these claims are proceeding in the alternative. SAC ¶¶ 134 (FAL), 157 (UCL).

Here, Plaintiffs allege that damages are inadequate for Gerber's continued misconduct because Plaintiffs' legal claims are more difficult to prove and, thus, may ultimately provide no remedy. *See* SAC ¶¶ 134, 157. There is also no remedy at law at all for Plaintiffs' unlawfulness claims. *See In re Juul Labs, Inc., Mktg., Sales Pract., & Prods. Liab. Litig.*, 2020 U.S. Dist.

LEXIS 197766, at \*225–27 (N.D. Cal. Oct. 23, 2020) (noting that "the allegations regarding unfair conduct are not otherwise coextensive with plaintiffs' legal claims"). As such, Plaintiffs have adequately explained why their legal remedies are inadequate at this stage. For this reason, Gerber's reliance on *Hanscom v. Reynolds Consumer Prods. LLC* is misplaced. No. 21-cv-03434-JSW, 2022 U.S. Dist. LEXIS 34057, at \*5 (N.D. Cal. Jan. 21, 2022). In *Hanscom*, the court rejected the plaintiffs attempt to plead an alternative unfair and unlawful substantiation theory because "[i]ndividuals may not bring suit under the UCL or the CLRA alleging only that advertising claims lack substantiation" and the plaintiff did not "plead facts establishing that the legal remedies under the CLRA and for her common law claims are 'inadequate or incomplete.'" *Id.* at 5–8. Here, Plaintiffs have sufficiently alleged claims in the alternative.

Gerber next argues "Plaintiffs also are not entitled to injunctive relief, because they do not plausibly allege 'an actionable certainly impending injury.'" ECF 72 at 8. Gerber claims "no Plaintiff alleges he or she still buys Products for children under two," "allegations that they 'would likely' purchase Gerber Products in the future . . . allege only a 'possible future injury,' not an 'actionable certainly impending injury.'" *Id.*

However, "[i]n the context of false advertising cases, the Ninth Circuit has explained that a plaintiff may establish the risk of future harm in two ways: (1) the consumer's plausible allegations that they will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although they would like to; or (2) the consumer's plausible allegations that they might purchase the product in the future, despite the fact it was once marred by false labeling because they may reasonably, but incorrectly, assume the product was improved." *Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760, at \*11–12 (N.D. Cal. Mar. 10, 2022) (citing *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018)).

Here, Plaintiffs allege that they continue to desire to purchase the Products, would likely purchase the Products again if the Products did not contain unlawful, deceptive, and misleading labels, and that they regularly visit stores where the Products are sold. SAC ¶¶ 97, 103, 109. These allegations are sufficient to confer standing to Plaintiffs. *See Kimberly-Clark Corp.*, 889

F.3d at 966–72 (plaintiff properly alleged a "threat of imminent or actual harm by not being able to rely on [the] labels in the future" that is "sufficient to confer standing to seek injunctive relief"); *see also In re S.C. Johnson & Son, Inc.*, 2021 U.S. Dist. LEXIS 141101 at *10–11 (N.D. Cal. July 28, 2021) ("[t]o the extent Defendant argues that such allegations are too 'tentative' to establish standing… the Court is not persuaded" because "[t]hese allegations track those found in *Davidson*, almost exactly").[4]

Moreover, to the extent more is required from Plaintiffs to have standing, the argument treads into an injury that is "capable of repetition, yet evading review." *Roe v. Wade*, 410 U.S. 113, 125 (1973). In the class action context, the Supreme Court has recognized that "some claims are so inherently transitory" that they could escape review on the basis of standing for injunctive relief. In those circumstances, the Court held that the "relation back" doctrine is "properly invoked" to confer standing. *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991). In *Riverside*, the Court addressed a plaintiff's claim seeking injunctive relief on behalf of himself and "all others similarly situated." *Id.* at 48. When plaintiff filed the complaint, he was incarcerated and had not received a probable cause determination. *Id.* He requested injunctive and declaratory relief that required the County to provide a probable cause determination. *Id.* While the case was pending, plaintiff received a probable cause determination and was released. *Id.* The County moved to dismiss the complaint, asserting that plaintiff lacked standing to bring the suit because he had failed to show, as required by *Los Angeles v. Lyons*, 461 U.S. 95 (1983), that he would again be subject to the allegedly unconstitutional conduct—i.e., a warrantless detention without a probable cause determination. *Id.* The defendant raised the argument again with the Court and the Court rejected it, holding that plaintiff had standing to pursue injunctive relief because the claim was "inherently transitory." *Id.* at 51–52.

The same is true here. Just because the natural march of time has allowed Plaintiffs' children to grow older than two does not mean that standing should be denied. Indeed, the passage of time and unknowing future of childbearing plans renders these claims "inherently

---

[4] Defendant relies on *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590 (9th Cir. 2018). ECF 72 at 9. But *Lanovaz* is inapplicable because it involved a plaintiff who testified under oath that he would not purchase the product again. There is no such testimony here.

transitory." Plaintiffs' claims for injunctive relief sufficiently relate back to the injuries they

sustained when purchasing Gerber's unlawfully and misleadingly labeled Products, and therefore

Plaintiffs have standing to pursue injunctive relief.

### iii.   Gerber's Implied Nutrient Content Claims Are Unlawful.

Gerber next argues that certain claims are not nutrient content claims because the Court

previously held that some "'made with' statements are not nutrient claims' because they are

'intended to highlight an ingredient 'perceived to add value to the product.'" ECF 72 at 10–11.

Thus, Gerber posits, the Court should dismiss other products with claims such as "1/4 cup of

farm-grown veggies," "9 grams of whole grains per serving," "Gerber Natural for Toddlers

brings the goodness of naturally nutritious fruits selected and made with strict quality standards

just for toddlers," "Grow Strong," and "Wonderfoods awaken baby's love for nutritious foods."

*Id.* at 11. Gerber essentially seeks a full reconsideration of this Court's prior holding that the

unlawful claims can proceed. *See* ECF 25 at 2–3 (rejecting argument that "the following phrases

are not nutrient content claims: 'Grow Strong,' 'Wonderfoods awaken toddler's love for

nutritious foods,' and 'Gerber Natural for Toddlers brings the goodness of naturally nutritious

fruits selected and made with strict quality standards just for toddlers.'"). As this Court explained:

"The statements above are clearly implied nutrient content claims. Gerber makes these

statements alongside explicit claims about the nutrients in their products. *See, e.g.*, ECF 1 at 49

(depicting pouch that says 'Grow Strong' alongside the statement '2 grams of Protein'). And the

statements suggest that Gerber's products are useful in maintaining healthy dietary practices—

they are not intended to provide 'general dietary guidance,' like the statement 'eat lots of fruits

and vegetables for a healthy diet.' 59 Fed. Reg. at 24235." ECF 25 at 3.

Gerber argues that "[c]laims referencing quantities of ingredients (such as fruits,

vegetables, wholegrains, and superfoods) are not nutrient content claims because they do not

make any express or implied representations about nutrients, as opposed to ingredients." ECF 72

at 12. But this ignores the FDA's definition of a nutrient content claim, which includes any claim

that "[d]escribes the food or an ingredient therein in a manner that suggests that a nutrient is

absent or present in a certain amount (e.g., 'high in oat bran')." 21 C.F.R. § 101.13(b)(2)(i).

Plaintiffs have specifically alleged that Gerber makes claims like "1 ½ servings of fruit" or "2 servings of superfoods" which "suggests that nutrients like fiber and vitamins are present in a certain amount." SAC ¶ 40. And the "9g Whole Grains" claim suggests fiber is present in a certain amount in the same manner "high in oat bran" does. *See Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-01196-WHO, 2013 U.S. Dist. LEXIS 138897, at *20 (N.D. Cal. Sep. 25, 2013) (rejecting argument that whole grains claims are not nutrient content claims); *see also Sprout*, 106 F.4th at 846 ("The agency was clearly concerned that such labeling could lead consumers to believe that a product was good for babies when the agency had no basis for such conclusions."). Plaintiffs have also alleged that "'superfood' 'is an industry term to denote nutrient-dense foods, synonymous with 'healthy' and 'nutritious.'" SAC ¶ 40. The superfood claims appear on labels alongside explicit statements about the level of nutrients (such as "20% DV of Vitamin C") which also meets the definition of an implied nutrient content claim. *See, e.g., id.*, Ex. A, Product No. 6; 21 C.F.R. § 101.13(b)(2)(ii).

Gerber next argues that "'10% DV of Vit C, 15% Vit E and 20% Iron to help support a healthy IMMUNE SYSTEM,' '20% DV Iron to help support healthy BRAIN DEVELOPMENT,' and 'Supports toddler's healthy growth with 15% DV of calcium and 2g protein'" are lawful ECF 72 at 12. However, Plaintiffs do not argue that the "% DV" claims are impermissible standing on their own, rather it is those "explicit claim[s] about a nutrient" paired with statements that suggest that the food "may be useful in maintaining healthy dietary practices," that render the claim as a whole to be an implied nutrient content claim that is prohibited on foods intended for children under two. In an attempt to justify its rehashing of prior arguments, Gerber relies on *Andrade-Heymsfield v. Danone US, Inc.*, No. 19-cv-589-CAB-WVG, 2019 U.S. Dist. LEXIS 137667, at *19 (S.D. Cal. Aug. 14, 2019) wherein the court found that "maximum calcium absorption" was a permissible structure/function claim. But this Court has previously rejected the notion that the nutrient content claims are permissible structure/function claims or it has any effect on the claims in this case. ECF 25 at 4, n.2. As this Court previously held, "[t]he statements above are clearly implied nutrient content claims" because "Gerber makes these statements alongside explicit claims about the nutrient in their

products" . . . and "the statements suggest that Gerber's products are useful in maintaining healthy dietary practices." ECF 25 at 3; *see Paschoal v. Campbell Soup Co.*, No. 21-cv-07029-HSG, 2022 U.S. Dist. LEXIS 168245, at *15 (N.D. Cal. Sep. 15, 2022). This Court should reject Gerber's attempt to view the product labels and product claims in isolation.

Contrary to Gerber's assertion, nothing about *Andrade-Heymsfiled*, supports the broad proposition that the "FDA interprets structure/function claims, and health claims, consistently across dietary supplements and conventional foods." ECF 72 at 11–12. This Court already rejected this argument. *See* ECF 25 at 4, n.2.[5]

### iv.   Plaintiffs' UCL "Unfair" Prong and Unjust Enrichment Claims May Proceed.

Finally, Gerber argues that Plaintiffs' UCL "'unfair' prong claim fails because it 'overlaps entirely' with Plaintiffs' invalid fraud claims." ECF 72 at 15. However, courts have rejected such an interpretation of the UCL because the UCL is written in the disjunctive and "is violated where a defendant's act or practice violates any of the foregoing prongs." *Bazarganfard v. Club 360 LLC*, No. 2:21-cv-02272-CBM-PLA(x), 2023 U.S. Dist. LEXIS 38210, at *36 (C.D. Cal. Jan. 26, 2023). And, contrary to Gerber's argument, Plaintiffs' unjust enrichment claim does not "fail for the same reason." ECF 72 at 15. As this Court held, "Given Howard's surviving claims, the motion to dismiss her unjust enrichment claim is denied as to those claims." ECF 25 at 6; *see also Sprout*, 106 F.4th at 853 ("In light of our reversal on the Sherman Law claim, an additional claim survives. We thus reverse the district court's dismissal of the unjust enrichment claim."); *Sanchez v. Nurture, Inc.*, 626 F. Supp. 3d 1107, 1120 (N.D. Cal. 2022) (where plaintiff states unlawful UCL claim, unjust enrichment claim survives).[6]

## III.   CONCLUSION

Based on the foregoing, the Court should deny Gerber's motion to dismiss.

---

[5] Gerber also reasserts that Plaintiffs lack standing to pursue claims against the unpurchased products. ECF 72 at 13–14. But the Court has already rejected this argument. ECF 25 at 1–2 ("Howard has standing to assert claims based on all the products and statements in her complaint"). Nothing has changed in the SAC that would defeat Plaintiffs' standing now.
[6] Should this Court find the SAC insufficient, Plaintiffs request leave to amend to correct any deficiencies. Leave "should be granted unless the Court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

Dated: November 1, 2024

**GUTRIDE SAFIER LLP**

*s/ Hayley A. Reynolds*
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Hayley A. Reynolds (State Bar No. 306427)
  hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*